WELSH BROWN, Respondent, v. I. N. BARR, Appellant.

**Kansas City Court of Appeals, November 23, 1914.**

1. **ASSAULT: Damages: Actual and Exemplary.** When one is ,present, aiding and abetting another who commits an assault, he is as much a principal as he who strikes the blow or fires the shot.

2. **INSTRUCTIONS: Pleading: Affirmative Defense.** When an instruction assumes to cover the whole case and ignores the defense of justification, it is not erroneous, where such an affirmative defense is not specially pleaded in the answer. Such defense cannot be raised under a general denial, and will be deemed waived, if not specially pleaded.

3. —————: **Damages.** An instruction on the measure of damages which employed the term "liable to suffer" in referring to future consequences of the injury does not constitute reversible error, nor does the use of the word "may."

4. **MISCONDUCT OF COUNSEL: Prejudicial Remarks: Exception.** Where counsel makes prejudicial and improper remarks in his argument to the jury, they will not be considered unless an exception is saved.

Appeal from Ray Circuit Court.—*Hon. Frank P. Divelbiss,* Judge.

AFFIRMED.

*Garner, Clark & Garner* and *M. J. Kilroy* for appellant.

*John A. Cross & Sons* and *J. L. Farris & Sons* for respondent.

JOHNSON, J.—Plaintiff instituted this suit in the circuit court of Clinton county against I. N. Barr and Fred Barr to recover actual and exemplary damages for an assault on plaintiff committed by defendant Fred, who is the son of his co-defendant. The petition

charged I. N. Barr, who was present at the alleged assault, "with wrongfully, unlawfully and knowingly aiding, abetting and encouraging and directing him, the said Fred Barr, in the wrongful, unlawful and intentional assaulting, shooting, wounding and injuring of plaintiff," etc. Summons was issued against both defendants and served on I. N. Barr but returned "*non est*" as to Fred. Thereafter the action was prosecuted against I. N. Barr as the sole defendant. An answer in the nature of a general denial was filed and in addition to answering defendant filed a counterclaim in which he sought to recover damages for an assault he alleged plaintiff committed upon him. The cause was tried in Ray county on change of venue and resulted in a verdict and judgment for plaintiff for $2000 actual and $500 exemplary damages and against defendant on his counterclaim. Defendant appealed.

The parties are farmers living near Lathrop in Clinton county. The alleged assault occurred on a part of defendant's farm occupied by his son Fred as his tenant and at the barn which was about 200 feet from the house. The home of defendant was a half a mile distant and defendant was there at the time of the beginning of the dispute which culminated in the assault. Frank P. Brown, the father of plaintiff, had bought some corn at a public sale held by defendant. The corn was in Fred's barn which contained another bin of corn owned by Fred. Brown, his son Welsh, (the plaintiff) and a farmhand named Asbury began hauling the corn to Brown's farm, using two teams and wagons for that purpose. While loading one of the wagons Brown the elder and Fred Barr had a dispute over the corn in the other bin. According to Brown's testimony he offered to buy the corn and Fred refused to sell. He then remarked to Fred that he had tried to buy the corn from Fred's father at the sale but he had declined to sell it on the ground that "Fred didn't want him to sell it." Fred an-

swered "I don't believe that you ever bought it or tried to buy it or he offered to sell it." Brown replied, "Yes, I did," and Fred retorted "You are a liar about it." Brown then said that Fred could keep his corn, that he did not like to be called a liar but did not want any trouble. Fred went to the house and returned in a few moments with a shotgun. Brown said "What are you going to do with your gun?" and he said "I didn't mean no trouble, I was just going to my father," and he broke it open and showed there were no shells in it and Brown said "That's all right, of course, but it looked kind of funny coming with your gun."

Fred's version of the dispute with Brown, senior, is entirely different. He states the first thing the Browns did after coming for the corn was to throw open the barn doors allowing a sow to escape and then to run their wagon over the shafts of a buggy and break them. We shall relate what followed in the words of the witness: "I went after the sow—she had got partly over towards my father, and drug her back, and when I drug her into the barn to shut the doors again, Frank Brown says: 'Oh, you ——, that's another one you stuffed in; and that's the reason your stuff didn't sell any better.' I never answered back. I never bid on a single thing, and he said 'That's no good; your word's no good, and your damned old daddy is the same way,' and I turned to start away to the house where my sister was, and I had turned and he said: 'We will be down to get the other corn tomorrow,' and I said 'What corn?' and he said 'That other corn; I bought that from your damned old father yesterday and I am going to send down here tomorrow and get it,' and I disputed his word and said he didn't buy it, and he called me vile names all the time, and I ran through the gate into the house, and when I ran through the door into the kitchen, Frank Brown was almost ready to come in the door when

I picked up the shotgun and he said 'Run, he's got the shotgun,' and Welsh was standing there with something in his hand which we afterwards found was a piece of an old scythe blade, and they ran back to the barn, and he said: 'What do you mean coming down here with an old shotgun; you need not bring it around here without you using it or I use it,' and I opened it up and showed them it wasn't loaded, and I said, 'I am going to my father and tell him,' '' etc.

Fred, who carried loaded shells in his pocket, then proceeded to his father's house and he and his father returned to the scene of the dispute in a wagon bringing the shotgun back with them. In the meantime Brown, senior, had departed with a load leaving plaintiff and Asbury loading the second wagon. The parties disagree about what then occurred. Plaintiff and Asbury say that when the Barrs drove up in their wagon Fred called three times "Brown, come out here," and receiving no answer, he and his father entered the barn, the young man saying "We are looking for trouble," to which the old man added "Yes and we are going to have trouble." Plaintiff replied that he did not want any trouble. Fred approached, loading the gun. Plaintiff jumped forward, grasped the gun and a struggle ensued for its possession which ended in a victory for plaintiff who wrested the gun, now loaded, from his adversary and threw it under the wagon. While this was going on Asbury was keeping the old man in check. Deprived of his gun Fred ran to a nearby woodpile, snatched up an ax and returned to the charge. Plaintiff fled for the gate at top speed and Fred, on a suggestion from his father, regained the abandoned gun and, spurred on by his father who yelled, "shoot him, damn him, shoot him," fired a shot at his fleeing enemy who was from 75 to 100 feet away. The gun was loaded with number 6 birdshot and a great number of them penetrated the back of plaintiff's left leg at and in the vicinity of the

knee-joint. In corroboration of plaintiff's assertion that he was shot in the back the testimony of Asbury, of the doctor who treated plaintiff, and the disclosures of a skiagraph of the wounded leg show beyond question that the shot struck the back of the leg and, of course, came from behind.

From the evidence of defendant it appears that on the return of Fred with his father he inquired for Brown senior and plaintiff replied that his father had departed but "By God, I fight his battles." Fred answered that they were not there to fight "but I want to see what he meant by taking my corn." He then set his gun down leaning it against the barn until the elder Brown appeared for another load. Finally plaintiff, seizing a favorable opportunity, ran in, grabbed the gun and, clubbing it, dealt Fred a blow which knocked him senseless for a moment. At the same time Asbury grabbed Barr, senior, from behind and held him fast with his arms pinioned to his sides. Plaintiff dropped the gun, ran for the ax and returned with it to assault Barr, senior, who was still being held fast by Asbury. Fred recaptured the gun, loaded it, and as plaintiff charged on his father with the ax, fired the shot which ended the battle.

None of the parties is fair in his testimony. There is evasion and palpable misstatement in the testimony of all the participants and eyewitnesses, but the controlling facts upon which the jury manifestly based their verdict are so well established as to be incontrovertible. Whatsoever the cause of the quarrel the return of young Barr and his father with a shotgun and the means of quickly loading it was an offensive movement which proclaims that they came with hostile intent and were bent upon having their own way at all hazards, and with the fact indisputably established that the shot must have been fired while plaintiff was running away, the defense of justification offered in the evidence, but not pleaded in the answer, is so com-

pletely swept away by the master facts we have mentioned that the jury could not well have done otherwise than to find as they did that an unjustifiable assault was made by young Barr upon plaintiff. And further we find ample evidence to support the finding of the jury that defendant urged his son to the assault. The rule is well settled that one who is present, aiding and abetting another who commits an assault, is as much a principal as he who strikes the blow or fires the shot. [Murphy v. Wilson, 44 Mo. 313; Gray v. McDonald, 104 Mo. 303; State v. Orrick, 106 Mo. 111; State v. Johnson, 111 Mo. 578; State v. Valle, 164 Mo. 539; Willi v. Lucas, 110 Mo. 219; Brouster v. Fox, 117 Mo. App. 711; Schafer v. Ostman, 172 Mo. App. l. c. 610.]

All persons who wrongfully aid in the commission of trespass are liable as principles and each is liable to the extent of the resultant injury. [Allred v. Bray, 41 Mo. 484.] But defendant argues that the instruction given at the request of plaintiff which assumed to cover the whole case was erroneous in that it ignored the defense of justification, i. e., that the assault was delivered in the necessary defense of defendant whose life was in jeopardy. The defense of *son assault demesne* is an affirmative defense, which, if not specially pleaded in the answer will be deemed waived. It cannot be raised under a general denial. O'Leary v. Rowan, 31 Mo. 117; Sloan v. Speaker, 63 Mo. App. 321; and since it was not specially pleaded in the answer the instruction under consideration should not be condemned for ignoring it.

The objection to plaintiff's instruction on the measure of damages which employed the term "liable to suffer" in referring to future consequences of the injury is fully answered in the opinion in Dean v. Railroad, 199 Mo. 386, where the use of the word "may" in a similar connection is held not to be reversible error. The court did not err, as defendant insists, in

peremptorily directing a verdict for plaintiff on the counterclaim, since there is no substantial evidence in the record to support the cause pleaded therein.

The point that counsel for plaintiff made improper and prejudicial remarks in his argument to the jury cannot be considered for the reason that no exception thereto is preserved in the record. The rule is that such objection will not be considered in the appellate court unless an exception is duly taken at the time and is preserved in the record. [State v. Dusenberry, 112 Mo. 277.] Moreover it appears from an additional abstract of the record brought here by plaintiff that the court rebuked the offending counsel, inquired of counsel for defendant "if the rebuke of the court was satisfactory" and was informed that it was. We do not understand why defendant should now complain of a ruling which he not only allowed to pass unchallenged by an exception but to which he gave express approval.

The judgment is affirmed. All concur.