Catherine PHELPS f/k/a Catherine J. Gordon, Appellant,

v.

Jeff BROSS, Richard A. Riesenbeck, and Golden Eagle Distributing Co., a Missouri Corporation, Respondents,

and

Greg Church, Defendant.

No. ED 79200.

Missouri Court of Appeals, Eastern District, Northern Division.

Feb. 5, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 17, 2002.

Application for Transfer Denied May 28, 2002.

John C. Garavaglia, Robert A. Strauss, St. Louis, MO, David H. Ash, Bowling Green, MO, for appellant.

Brian E. McGovern, Katherine S. Walsh (Bross), Chesterfield, MO, Mark S. Wasinger (Golden/Riesenbeck), Hannibal, MO, David C. Mobley (Church), New London, MO, for respondent.

ROBERT G. DOWD, JR., Judge.

Catherine Phelps ("Phelps") appeals from the trial court's grant of summary judgment in favor of Jeff Bross ("Bross"), Richard Riesenbeck ("Riesenbeck"), and Golden Eagle Distributing Co. ("Golden Eagle"). Phelps brought a four-count Petition against Bross and Greg Church ("Church") for assault, battery, and false imprisonment and against Riesenbeck and Golden Eagle for negligently failing to provide transportation and security. Phelps claims the trial court erred in granting summary judgment for Bross because the evidence shows genuine issues of material fact as to whether an assault occurred and whether Bross and Church were jointly and severally liable for battery. Phelps further claims the trial court erred in granting summary judgment for Riesenbeck and Golden Eagle because the evidence presents genuine issues of material fact as to whether Riensenbeck and Golden Eagle assumed a duty to provide security and transportation for Phelps and failure to do so resulted in a breach of that duty. We affirm in part and reverse and remand in part.

Phelps's claims arose out of a golf tournament in Canton, Missouri where she was working for Golden Eagle as a "Budweiser Girl." We review the record in light most favorable to Phelps. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply*

*Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The record shows that Riesenbeck, president of Golden Eagle, encouraged Phelps and her sister, Sharon Sherman, to become Budweiser Girls for Golden Eagle. Riesenbeck informed Phelps of the rules, practices, and procedures for the Budweiser Girls. He explained that no husbands or boyfriends were to attend the events with the women, and he emphasized the women were required to go to and from the events on transportation provided by Golden Eagle. Riesenbeck also explained that someone from Golden Eagle would be at the events to insure that the rules and procedures were being followed. Riesenbeck told Phelps that these employees would be present to make sure guests did not harass the women and to make sure things did not get out of hand. Phelps signed an independent contract agreement.

Prior to the golf tournament, Phelps attended two events as a Budweiser Girl. At both events she was required to ride in transportation provided by Golden Eagle, and at least two Golden Eagle employees were present at all times to watch over the event and the women.

In early May 1996, Phelps was contacted by Riesenbeck and told that the next event was a golf tournament at the River Valley Golf Course in Canton, Missouri. Riesenbeck directed Phelps to meet him at the Holiday Inn in Hannibal where there would be a bus to take the women to and from the tournament.

On the morning of the tournament, Phelps arrived at the Holiday Inn and met Riesenbeck, who was in charge of the group of Budweiser Girls from Hannibal. Once the tournament began, Phelps was assigned to accompany a group of men, including Church and Bross, as a scorekeeper. On the ride to and during the tournament, complimentary alcoholic beverages were served by Golden Eagle, with-out restriction and free of charge. Phelps testified that she had several drinks during the event.

When the tournament was complete, Phelps claims she returned to the bus for the purpose of going back to the Hannibal. However, Riesenbeck told her to return to the golf complex because there was an award ceremony. During the ceremony, Bross and Church asked Phelps to attend a party with them after the event. Phelps claims that she declined and told them that she was required to ride the bus back to the hotel. Bross and Church then spoke with Riesenbeck to get his permission for Phelps to go with them. Phelps alleges that Riesenbeck then approached her and told her it would be fine for her to ride with Bross and Church back to Hannibal. Phelps claims that she told Riesenbeck that she was not comfortable going with the men, and when she tried to enter Golden Eagle's bus, Riesenbeck threw her duffel bag from the bus and instructed her to ride with Bross and Church. Shortly thereafter, the bus left.

While Phelps was riding with Bross and Church back to Hannibal, she noticed that their truck was entering a residential area in Palmyra, Missouri, so Phelps asked the men where they were going. Bross told her that he had to check on his swimming pool and that the stop would be short. When they arrived at Bross's home, he asked Phelps to come to the backyard and see his swimming pool. Upon entering the residence, Church handed Phelps an open beer. Phelps alleges that immediately after drinking a small portion of the beer she became unconscious. Upon regaining consciousness several hours later, Phelps noticed she was in a different room than she had been immediately before becoming unconscious. Her clothing had been removed and she was lying naked in bed with Bross lying next to her fully dressed

and awake. Phelps testified in her deposition that upon awaking she became terrified and ran into the living room where she pleaded with Church to take her home. When Church refused, Phelps ran out the front door naked and across the street to Mary Griffin's home. Griffin provided her a blanket and contacted the Palmyra Police. Phelps told Sergeant Hester that she thought she had been raped. Phelps was transported to the emergency room where she was examined, treated, and released. The treating physician diagnosed her with "sexual assault."

Church admitted to having sexual intercourse with Phelps while at Bross's residence but contended that Phelps had consented. Phelps claims that at no time did she consent to any sexual activity with Church or anyone else. Phelps filed suit against Church, Bross, Riesenbeck, and Golden Eagle. Each Defendant filed motions for summary judgment. The court granted summary judgment in favor of Bross, Reisenbeck, and Golden Eagle. Church's motion for summary judgment was denied. Phelps now appeals [1].

Summary judgment is granted only in situations in which the movant can establish that no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law. Rule 74.04. This procedure has long been regarded as "an extreme and drastic remedy and great care should be exercised in utilizing the procedure." *Cooper v. Finke*, 376 S.W.2d 225, 229 (Mo.1964). At the foundation of such skepticism toward summary judgment is the feeling that the procedure "borders on denial of due process in that it denies the opposing party his day in court." *Olson v. Auto Owners Ins. Co.*, 700 S.W.2d 882, 884 (Mo.App. E.D.1985).

When considering whether movant can establish that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law, our review is essentially *de novo* as the propriety of summary judgment is purely a question of law. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. We review the record in the light most favorable to the party against whom the judgment was entered, and facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the nonmoving party's response to the summary judgment motion. *Id.*

Phelps claims in her first point that the trial court erred in granting summary judgment in favor of Bross on her claim of assault because the evidence showed genuine issues of material fact as to whether an assault had occurred. We agree.

Assault is defined as "any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril." *Geiger v. Bowersox*, 974 S.W.2d 513, 516 (Mo.App. E.D. 1998). Bross argues that because Phelps cannot show that he made any sexual contact with her she cannot prove an assault took place. While in Missouri cases of assault unaccompanied by the physical contact of battery are rare, it is not impossible to prove assault without physical contact. An example of one such case is *Hickey v. Welch*, 91 Mo.App. 4, 14, 1901 WL 1547 (1901) where defendant was found to have committed an assault by pointing a pistol at the plaintiff and threatening to shoot her, but did not fire the weapon. Putting the plaintiff in fear of present violence "an inchoate battery" was found to be actionable. *Id.* at 5.

---

1. Greg Church is not a Respondent in this    appeal.

Missouri Approved Instruction for assault also follows the concept that assault is an attempted or inchoate battery. M.A.I. 23.01 (1981). Under M.A.I. 23.01, assault requires the following elements to be proven: (1) defendant's intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent, and (3) apprehension of bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct.

■ Reviewing the record in the light most favorable to Phelps, we find the circumstances demonstrate a genuine issue of material fact as to whether Bross intended to cause Phelps offensive contact or bodily harm or apprehension of either, the first element needed to prove assault. The record demonstrates that Bross did in fact crawl into bed with Phelps, as she lay unconscious and undressed. The fact that Bross denies having such intent is not conclusive, as intent frequently is not susceptible of direct proof, and it may be inferred from facts and circumstances which legitimately so permit. *State v. Selle,* 367 S.W.2d 522, 527 (Mo.1963), and *State v. Roden,* 674 S.W.2d 50, 53 (Mo. App. W.D.1984).

■ The second element needed to prove assault is the defendant's conduct, indicating intent to cause offensive contact. It is well established in Missouri criminal cases that actual violence or offensive contact is unnecessary to constitute assault. Rather the assault is complete if the intent, with the present means of carrying it into effect, exists, and preparations therefor have been made. *See, State v. Shroyer,* 104 Mo. 441, 16 S.W. 286, 287 (1891); *State v. Selle,* 367 S.W.2d 522, 527 (Mo. 1963); *State v. Pinkard,* 318 Mo. 751, 300

S.W. 748, 751 (1927); and *State v. Knoch,* 14 S.W.2d 424 (Mo.1929).

■ The third element needed to prove assault is the apprehension of bodily harm or offensive contact by defendant's conduct. When Phelps regained consciousness and found herself naked in bed and Bross lying next to her, she was in apprehension of bodily harm or offensive contact by Bross. This is strongly supported by her testimony the she was "scared" and "terrified" and the fact that she immediately ran from the bedroom naked and then out of the house to a neighbor's home across the street. Point granted.

In Phelps's second point, she asserts the trial court erred in granting summary judgment in favor of Bross on her claim for battery because the evidence showed genuine issues of material fact as to whether Bross and Church were jointly and severally liable for battery or whether there was a conspiracy between Bross and Church to commit the battery. We disagree.

■■ Battery is defined as an intended, offensive bodily contact with another. *Geiger,* 974 S.W.2d at 516. Phelps asserts in her petition that, "while [she] was unconscious, Bross, while acting with Church, removed [her] clothing and sexually assaulted [her]." However, Phelps has no recollection that Bross in fact ever touched her in any offensive manner or that he encouraged or aided Church in doing so. Appellant cited several cases in support of her argument; however, in all of these cases, evidence existed that the individual held jointly and severally liable encouraged, incited, or participated in the battery.[2] Because Phelps cannot show that

---

**2.** *Gray v. McDonald,* 104 Mo. 303, 16 S.W. 398, 400 (1891) (evidence showed that father, who was at the scene of the shooting, encour- aged the assault and struck the victim after he was shot by the son); *Brown v. Barr,* 184 Mo.App. 451, 171 S.W. 4 (1914) (evidence

Bross, acting with Church, made any offensive contact with her, she cannot prove battery under Missouri law.

■ Phelps is also unable to prove that a conspiracy to assault her existed between Church and Bross. A civil conspiracy is "an agreement between two or more persons to perform an unlawful act, or to use unlawful means to do an act which is lawful." *Lyn–Flex West, Inc. v. Dieckhaus,* 24 S.W.3d 693, 700 (Mo.App. E.D.1999). To state a claim for conspiracy, Phelps would have to establish: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) the plaintiff was thereby injured. *Oak Bluff Partners, Inc. v. Meyer,* 3 S.W.3d 777, 781 (Mo. banc 1999). There are no facts in the record that suggests that Bross and Church made an agreement or a "meeting of the minds" to assault her. Further, there is no indication that Bross acted to further the alleged conspiracy. Point denied.

In Phelps's third point, she claims the trial court erred in granting summary judgment for Riesenbeck and Golden Eagle because there is a genuine issue of material fact as to whether Riesenbeck and Golden Eagle assumed a duty to provide security and transportation to her and the failure to provide such was a breach of their duty.

Phelps alleges in her petition that Golden Eagle was negligent because it breached its legal duty to provide for her security while she was working as a Budweiser Girl and traveling to and from scheduled events. She further alleges that Golden

Eagle breached that duty, acting through Riesenbeck, by negligently failing to provide transportation from the golf tournament and failing to provide for her security.

■ The elements for a claim of negligence are as follows: (1) defendant has a legal duty to use ordinary care to protect plaintiff from injuries; (2) breach of that duty; (3) proximate cause between the breach and resulting injury; and (4) actual damages to plaintiff's person or property. *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.,* 700 S.W.2d 426, 431 (Mo. banc 1985).

■ The existence of a duty is purely a question of law. *Aaron v. Havens,* 758 S.W.2d 446, 447 (Mo. banc 1988). Generally, a person owes no duty to protect another from a criminal act by a third party. *Knop v. Bi–State Development Agency,* 988 S.W.2d 586, 589 (Mo.App. E.D.1999). Missouri has recognized two major exceptions to this general rule. These exceptions arise from a "special relationship" or "special facts and circumstances." *Keenan v. Miriam Foundation* 784 S.W.2d 298, 302 (Mo.App. E.D.1990). Phelps alleges the "special relationship" exception exists in this case. Under the "special relationship" exception, Missouri will impose liability if the plaintiff shows that a "special relationship" existed between the plaintiff and the defendant such that the plaintiff entrusted himself or herself to the protection of the defendant and relied upon the defendant to provide a place of safety. *Id.* Phelps contends that a "special relationship" existed by the actions and statements of Riesenbeck, and therefore, Golden Eagle assumed a duty to provide for her safety. We agree.

showed that father urged his son to shoot the victim); *McMannus v. Lee,* 43 Mo. 206, 1869 WL 4967 (1869) (evidence showed that defendants were part of a gang of armed men that terrorized the city, even if the particular de-

fendant did not participate in the specific crime charge); *Watters v. Hayden,* 219 Mo. App. 673, 284 S.W. 828 (1926) (evidence showed that wife acted in concert with husband by striking the plaintiff).

In *Keenan*, a premises liability case, a "special relationship" was found when a charitable donor was directed and invited into an area of defendant's premises that defendant represented to be safe and secure for the purpose of dropping off donations. *Id.* at 300. When the plaintiff in *Keenan* expressed her concern about the safety of the neighborhood, defendant told her that an employee would be with her at all times and she would not be in danger. *Id.* Plaintiff was later attacked and shot in the back of the building when defendant's employees left her alone for five to ten minutes. *Id.* This court found that defendant, by its oral assurances of safety, had assumed the duty to protect the plaintiff from intentional criminal conduct of unknown third persons and that this assumption of the duty created a "special relationship" between plaintiff and defendant. *Id* at 304. This court in *Keenan* relied upon its holding in *Nappier v. Kincade*, 666 S.W.2d 858, 861 (Mo.App. E.D 1984) where it stated that "special relationships" include those in which a party entrusts himself to the protection of another and relies upon that person to provide a place of safety. In relying upon this statement, this court in *Keenan* found such relationships include "innkeeper-guest, common carrier-passenger, school-student, and sometime employer-employee, but do not include landlord-tenant relationship." *Id* at 302.

While Phelps admits that her relationship with Golden Eagle was characterized in their contract as an independent contractor, she claims with respect to security and transportation Golden Eagle undertook a duty to provide for her safety through assurances made by Riesenbeck. Phelps argues that just as the defendant in *Keenan* assumed a duty to protect the plaintiff by oral assurances of safety, Riesenbeck and Golden Eagle assumed a duty to protect her by their oral assurances of

providing transportation and safety and because of these assurances, she entrusted her protection to Riesenbeck and Golden Eagle and relied upon them to provide a place of safety. Thus, Phelps argues *Keenan* is controlling.

The evidence taken in light most favorable to Phelps shows that Riesenbeck did in fact inform Phelps that while she was representing Golden Eagle as a Budweiser Girl she would be required to take transportation provided by Golden Eagle to and from events. Riesenbeck also assured Phelps that at all times and at all events someone from Golden Eagle would accompany the women to keep watch over them and insure their safety. Just like the defendant in *Keenan*, Riesenbeck and Golden Eagle made assurances that assumed a legal duty to provide for Phelps's safety. We therefore find a "special relationship" existed.

On the day in question, Phelps was specifically instructed by Riesenbeck to meet at the Holiday Inn in Hannibal to ride to and from the tournament in a vehicle provided by Golden Eagle. Phelps had every reason to expect that she would safely return to Hannibal in that same transportation. In describing the requirements and procedures for representing Golden Eagle as a Budweiser Girl, Riesenbeck told Phelps that she would be required to ride in transportation provided by Golden Eagle and an employee from Golden Eagle would be at all events to watch over the women. Despite this understanding, Riesenbeck repeatedly told Phelps, over her objection, that she would be fine riding back to Hannibal with Bross and Church. Based upon these facts, there is a genuine issue as to whether Riesenbeck and Golden Eagle breached the duty owed to Phelps and, if so, whether that breach was the proximate cause of Phelps's injuries. These are questions for the jury.

Because we find genuine issues of material fact exist as to whether Bross committed an assault on Phelps and we find Riesenbeck and Golden Eagle assumed a duty to protect and provide Phelps transportation to and from the golf tournament and genuine issues of material fact exist as to whether Riesenbeck and Golden Eagle breached that duty, we find summary judgment was not appropriate. We reverse the judgment of the trial court on points I and III and remand for further proceedings consistent with this opinion. We affirm on point II.

JAMES R. DOWD, C.J., and WILLIAM H. CRANDALL, JR., J., concur.