Kerry INMAN and Tina Inman,
Plaintiffs–Appellants,

v.

Nicholas DOMINGUEZ, Defendant,

and

Con–Way Truckload, Inc., d/b/a
Contract Freighters, Inc.,
Defendant–Respondent.

No. SD 31441.

Missouri Court of Appeals,
Southern District,
Division One.

May 30, 2012.

Motion for Rehearing and Transfer Denied
June 21, 2012.

Application for Transfer
Denied Aug. 14, 2012.

Steve Garner, Chandler Gregg, Jeff Mitchell, Strong–Garner–Bauer, P.C., Springfield, MO, for Appellants.

Dan L. Birdsong and David A. Osborne, Thomas, Birdsong, Mills & McBride, P.C., Rolla, MO, for Respondent Con–Way Trackload, Inc., d/b/a Contract Freighters, Inc.

GARY W. LYNCH, J.

Kerry Inman and Tina Inman appeal the trial court's grant of summary judgment in favor of Con–Way Truckload, Inc., d/b/a Contract Freighters, Inc. ("CFI"). The Inmans' claims against CFI arose from an altercation in which Nicholas Dominguez, a CFI employee, stabbed Kerry Inman at a truck stop. The trial court sustained CFI's motion for summary judgment and dismissed the claims, finding that CFI was not liable for Dominguez's actions as a matter of law because his actions were not in the course and scope of his employment with CFI. The Inmans now claim that summary judgment was precluded because genuine issues of material fact exist as to whether Dominguez's actions were in the course and scope of his employment with CFI, as well as to whether Dominguez's employment with CFI aided his conduct so as to impose vicarious liability. Finding no merit in the Inmans' first claim and that their second claim is not properly before us for review, we affirm.

### *Factual and Procedural Background*

"When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). In that context, the following uncontroverted facts were presented to the trial court.

Dominguez was an over-the-road truck driver employed by CFI—an interstate commercial motor carrier—from May 7, 2003, to December 21, 2007. Dominguez was paid on a per-mile basis. On December 18, 2007, Kerry Inman—an over-the-road truck driver for a different trucking company—was en route from Louisiana to Chicago on Interstate 40 when Dominguez—en route to Connecticut—attempted to enter Inman's lane ahead of Inman. Dominguez "flipped Inman off[.]" Shortly thereafter, both Inman and Dominguez exited the highway and drove to Love's Truck Stop in Palestine, Arkansas; Dom-

inguez purportedly drove to the truck stop to complete paperwork, including his federal log book, and to meet another driver whom he was supposed to awaken. At the truck stop, Dominguez exited his truck and approached Inman, asking him "what [his] problem was"; Inman responded that he "didn't have a problem" and proceeded to explain to Dominguez "that [he] could not let [Dominguez] out in front of [him] when [he] was already started past [Dominguez], and [he] could not slam on [his] brakes in front of another driver." Dominguez "said a choice word" and then stabbed Inman in the chest. Due to his stab injuries, Inman was unable to return to work as an over-the-road truck driver.

The Inmans filed their petition against Dominguez and CFI on September 9, 2008. The petition alleged four counts: negligence against both Dominguez and CFI (Count I); negligent hiring, supervising, training, and retaining against CFI (Count II); assault against both Dominguez and CFI (Count III); and loss of consortium against both Dominguez and CFI (Count IV). CFI filed a motion for summary judgment contending that it was entitled to judgment as a matter of law on the counts against it because Dominguez's actions were not in the course of his employment with CFI and because CFI had engaged in appropriate and adequate screening and review procedures in hiring, training, and retaining Dominguez.

The trial court sustained CFI's motion and granted summary judgment in its favor. The trial court primarily based its decision on the holdings in *Wellman v. Pacer Oil Co.*, 504 S.W.2d 55 (Mo. banc 1974), and *Noah v. Ziehl*, 759 S.W.2d 905

(Mo.App.1988), finding that Dominguez's action in stabbing Kerry Inman was too outrageous to ever constitute an action within the course and scope of Dominguez's employment with CFI. It also found no facts supporting the Inmans' contention that CFI had negligently hired, trained, or retained Dominguez.[1] This appeal followed.

### Standard of Review

"Rule 74.04 provides for disposition of cases by summary judgment ruling when there is no genuine issue of material fact and the moving party has demonstrated that it is entitled to judgment in its favor as a matter of law."[2] *Hare v. Cole*, 25 S.W.3d 617, 618 (Mo.App.2000). As stated *supra*, we "review the record in the light most favorable to the party against whom judgment was entered[,]" and we "accord the non-movant the benefit of all reasonable inferences from the record." *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376.

"Our review is essentially *de novo.*" *Id.* We use the same criteria as the trial court to determine the propriety of sustaining a motion for summary judgment. *Id.* This issue—the propriety of summary judgment—is solely an issue of law and, as such, we need not defer to the trial court's determinations. *Id.*

### Discussion

The Inmans present two points for our review; we address them in the order presented.

### Conduct Not Within Course and Scope of Employment

■ In their first point, the Inmans contend that the trial court erred in granting

---

1. The Inmans' claims on appeal both relate to CFI's alleged vicarious liability for Dominguez's conduct. They do not challenge the trial court's entry of summary judgment in

favor of CFI on their claims of active negligence by CFI.

2. As applicable here, *see* Rule 74.04, Missouri Court Rules (2012).

CFI's motion for summary judgment because genuine issues of material fact still exist regarding whether Dominguez was within the course and scope of his employment with CFI at the time of the stabbing, namely "that road rage is a well-known hazard of truck driving, CFI was aware of its drivers' propensities to engage in road rage conduct, and Dominguez's conduct occurred at an authorized time and place while he was transporting goods for CFI[.]" No fact contested by the Inmans, however, is material to the issue at hand, and CFI was entitled to judgment as a matter of law on this issue.

"Under the doctrine of respondeat superior, an employer is held responsible for the misconduct of an employee where that employee is acting within the course and scope of his employment." *Tuttle v. Muenks,* 964 S.W.2d 514, 517 (Mo.App.1998). "The course and scope of employment is defined 'as acts (1) which, even though not specifically authorized, are done to further the business or interests of the employer under his "general authority and direction" and (2) which naturally arise from the performance of the employer's work.' " *Daugherty v. Allee's Sports Bar & Grill,* 260 S.W.3d 869, 872–73 (Mo.App.2008) (quoting *Maryland Cas. Co. v. Huger,* 728 S.W.2d 574, 579 (Mo. App.1987)) (emphasis removed). " 'Naturally,' implies that the employee['s] conduct must be usual, customary and expected. This amounts to a requirement of foreseeability." *Maryland Cas. Co.,* 728 S.W.2d at 579–80. The doctrine of respondeat superior applies to those "torts committed 'while [the employee] is engaged in an activity' that is within the scope of employment." *Daugherty,* 260 S.W.3d at 873 (quoting *P.S. v. Psychiatric Coverage, Ltd.,* 887 S.W.2d 622, 624 (Mo.App.1994)). The requisite test is whether the activity at issue was "done by virtue of the employ-

ment and furtherance of the business interest of the employer." *Daugherty,* 260 S.W.3d at 873.

The two cases relied upon by the trial court in its judgment—*Wellman,* 504 S.W.2d 55, and *Noah,* 759 S.W.2d 905—are directly on point. In *Wellman,* the plaintiff stopped at a gas station with his wife and had the attendant perform various services on their vehicle. 504 S.W.2d at 56. Shortly after leaving the gas station, the vehicle's hood flew open and the plaintiff was unable to close it. *Id.* When the plaintiff returned to the gas station and indicated to the attendant that the hood might be damaged, the attendant instigated an altercation with the plaintiff, which ultimately resulted in the attendant shooting the plaintiff. *Id.* Our supreme court reversed a jury verdict assigning vicarious liability to the attendant's employer, finding "that the actions of [the attendant] were so outrageous and criminal—so excessively violent as to be totally without reason or responsibility—and hence must be said, as a matter of law, not to be within the scope of his employment." *Id.* at 58. In so ruling, the *Wellman* court expressly incorporated several statements from Restatement (Second) of Agency:

"The fact that the servant intends a crime, especially if the crime is of some magnitude, is considered in determining whether or not the act is within the employment, since the master is not responsible for acts which are clearly inappropriate to or unforeseeable in the accomplishment of the authorized result. The master can reasonably anticipate that servants may commit minor crimes in the prosecution of business, but serious crimes are not only unexpectable but in general are in nature different from what servants in a lawful occupation are expected to do.

A chauffeur, driving on an errand for his master, who knowingly drives on the left-hand side of the street or exceeds the speed limit, is still acting within the scope of employment. Likewise, a gardener using a small stick in an assault upon a trespassing child to exclude him from the premises may be found to be acting within the scope of the employment; if, however, the gardener were to shoot the child for the same purpose, it would be difficult to find that act within the scope of employment. So, if a servant is directed to use any lawful means to overcome competition, the bribery of employees of the competitor or the circulation of malicious stories, might be found to be within the scope of employment, while the murder of the competitor, although actuated solely by zeal for the master, would not be."

*Wellman,* 504 S.W.2d at 58 (quoting RE-STATEMENT (SECOND) OF AGENCY § 231 cmt. a (1957)). The court further stated,

"The fact that an act is done in an outrageous or abnormal manner has value in indicating that the servant is not actuated by an intent to perform the employer's business. * * * In such cases, the facts may indicate that the servant is merely using the opportunity afforded by the circumstances to do the harm. Hence, unless the principal has violated a personal duty to the person injured, or unless he becomes liable because of the nature of the instrumentality entrusted to the servant ... he is not liable for such acts."

*Wellman,* 504 S.W.2d at 58 (quoting RE-STATEMENT (SECOND) OF AGENCY § 235, cmt. c (1957)). This court is constitutionally obligated to follow *Wellman* as the last controlling decision of the Supreme Court of Missouri on this issue. Mo. Const. art. V, § 2 (1945); *Farm Bureau Town &*

*Country Ins. Co. of Missouri v. Rogers,* 959 S.W.2d 880, 883 (Mo.App.1997).

The court in *Noah* also applied this standard. In that case, the plaintiff was a bar patron who, in attempting to leave the bar, "patted [a girl] on her ... behind end to get her going[.]" 759 S.W.2d at 907. The girl's boyfriend, who happened to be the bar's bouncer, witnessed the plaintiff's action and confronted the plaintiff. *Id.* An altercation ensued, with the bouncer trying "to gouge [the plaintiff's] eyes out[,]" "beating his head up against the brick wall next to the door[,]" and "stabb[ing him] twice in the arm[.]" *Id.* (internal quotations omitted). In applying the ruling in *Wellman,* the *Noah* court noted, "Of primary importance are the nature of the principal's business, whether or not the employment will bring the employee into contact with the public and the likelihood that the employment will involve the use of force and whether or not the employee acts from a personal motive." *Noah,* 759 S.W.2d at 911. It went on to note,

The doctrines in *Wellman* and *Henderson* [*v. Laclede Radio, Inc.,* 506 S.W.2d 434 (Mo.1974)], although framed in terms of outrageous conduct or unexpected results, are part and parcel of the principle that when conduct of an employee exceeds the scope and course of employment and are done, not in furtherance of the employer's business, but to gratify the employee's feelings of resentment or revenge, the conduct is outside the scope and course of the employment.

*Id.* The court then found that the bouncer's actions in assaulting the plaintiff had been so outrageous and unexpected, and so motivated by personal feelings of revenge, as to be outside the scope of his employment as a matter of law. *Id.* at 912.

Such is the case here. Dominguez's actions in stabbing Kerry Inman—just like

the gas station attendant's actions in shooting the customer in *Wellman* and the bouncer's actions in beating and stabbing the bar patron in *Noah*—are, as a matter of law, simply too outrageous and unexpected to ever be considered within the course and scope of his employment with CFI. Moreover, the uncontroverted facts show that Dominguez acted not in furtherance of his employer's interests but rather with the personal goal of exacting revenge, which further removes his conduct from the realm of his employment. *See id.* at 911.

It is uncontroverted that Dominguez left his truck and then approached and stabbed Kerry Inman. Under the language used in both *Wellman* and *Noah,* there is no conceivable factual scenario in which that outrageous conduct could be considered within the course and scope of his employment. Therefore, the other facts contested by the Inmans are immaterial to the resolution of their claim, and the Inmans' first point is denied.

### Claim Not Properly Before this Court

■ In their second point, the Inmans contend that, even if Dominguez's conduct was not within the course and scope of his employment with CFI, the trial court still erred in granting CFI's motion for summary judgment because genuine issues of material fact exist as to whether Dominguez's conduct was actuated or aided by his employment with CFI. Because the Inmans did not raise this alternative theory of recovery in their petition, and consequently it was not ruled upon by the trial court, it is not properly before us for review.

In moving for summary judgment, a movant "must demonstrate that he or she is entitled to judgment as a matter of law on any theory of recovery within the scope of the plaintiff's petition." *Moreland v.*

*Farren–Davis,* 995 S.W.2d 512, 516 (Mo. App.1999). The Inmans' petition invokes the doctrine of respondeat superior based only upon the theory that Dominguez's conduct occurred within the course and scope of his employment with CFI. The Inmans' alternative theory—even if Dominguez was not acting within the course and scope of his employment with CFI, CFI should still be held liable because Dominguez's conduct was actuated or aided by his employment—was first raised in their response to CFI's motion for summary judgment. The Inmans never moved to amend their petition to include this new theory of vicarious liability. Consequently, CFI's motion for summary judgment dealt exclusively with the theory of liability espoused in the Inmans' petition—Dominguez acted within the course and scope of his employment with CFI when he stabbed Kerry Inman—and the trial court ruled on only that theory of recovery. As the issue was not properly before the trial court, it cannot now be properly before us for review. *See Lincoln Credit Co. v. Peach,* 636 S.W.2d 31, 36 (Mo. banc 1982) (holding that an appellate court may not address issues not raised before the trial court). The Inmans' second point is denied.

### Decision

The trial court's judgment is affirmed.

DON E. BURRELL, P.J. and JEFFREY W. BATES, J., Concurs.