**Zachary B. ELIAS, Appellant,**

v.

**Kenneth DAVIS and Sterling Edwards, Respondents.**

**WD 80259**

Missouri Court of Appeals, Western District.

OPINION FILED: August 8, 2017

Aly R. Brownlee and Christopher C. Fink, Kansas City, MO, for Appellant.

Christina L. Ingersoll, Overland Park, KS, for Respondents.

Before Division IV: Mark D. Pfeiffer, Chief Judge, and James Edward Welsh and Edward R. Ardini, Jr., Judges

James Edward Welsh and Edward R. Ardini, Jr., Judges, concur.

**Mark D. Pfeiffer, Chief Judge**

Zachary Elias ("Elias") appeals the summary judgment entered by the Circuit Court of Clay County, Missouri ("trial court"), in favor of Kenneth Davis ("Davis") and Sterling Edwards ("Edwards") on Elias's claims for negligence and assault and battery. The summary judgment is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

**Factual and Procedural Background**

On October 19, 2010, Elias was a sixteen-year-old high school student at Winnetonka High School in the North Kansas City School District and played varsity football for the school. Edwards was the head coach, and Davis was a position coach. On that day, apparently thinking it was an exercise of good coaching judgment, Coaches Edwards and Davis decided to have a full-grown adult (*i.e.,* Davis) dress out in full football helmet and

padding to engage in live scrimmage full contact with the teenaged members of this high school football team. Davis had never scrimmaged with the team in full football pads and helmet before that day. On one of the scrimmage plays at full speed, Elias was positioned as a middle linebacker, and Davis was positioned as a running back. During the play, Davis received the handoff from the quarterback and ran through the defensive line and into Elias's zone where Elias was the next line of defense to attempt to tackle Davis. In Elias's attempt to tackle Davis and the ensuing bodily collision between adult and child, Elias's ankle was broken.

Elias brought negligence and assault and battery claims against Edwards and Davis. The coaches filed a motion for summary judgment. They argued that Elias's negligence claim was barred for two separate reasons—official immunity and assumption of risk—and that his assault and battery claim was barred because Elias consented to the contact with Davis. The trial court granted summary judgment for Edwards and Davis on Elias's claims. Elias timely appealed.

## Standard of Review

Appellate review of a summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The appellate court reviews the record in the light most favorable to the party against whom judgment was entered and affords that party the benefit of all reasonable inferences. *Id.* Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* at 380; Rule 74.04(c)(6).

■ A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action, (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense. *ITT Commercial*, 854 S.W.2d at 381. Once the movant has established a right to judgment as a matter of law, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. *Id.* The non-moving party may not rely on mere allegations and denials of the pleadings, but must use affidavits, depositions, answers to interrogatories, or admissions on file to demonstrate the existence of a genuine issue for trial. *Id.* Where summary judgment has been granted based on the affirmative defense of official immunity, the appellate court must consider whether there is a genuine dispute as to the existence of facts necessary to support the affirmative defense. *Woods v. Ware*, 471 S.W.3d 385, 389 (Mo. App. W.D. 2015); *Nguyen v. Grain Valley R-5 Sch. Dist.*, 353 S.W.3d 725, 729 (Mo. App. W.D. 2011).

## Negligence

■ On appeal, Elias contends that the trial court erred in granting summary judgment on his negligence claim. He argues that: (1) there is a genuine dispute as to the existence of facts necessary to support the defense of official immunity; and, (2) there is a genuine dispute as to the existence of facts necessary to support the defense of assumption of risk. Because we conclude that the record before us does *not* demonstrate the existence of a genuine dispute as to the existence of facts supporting the defense of official immunity, we need not and do not discuss issues

relating to the defense of consent or assumption of risk as it relates to the negligence count. However, these topics will be discussed later in our ruling relating to the assault and battery claims.

The judicially-created doctrine of official immunity "is intended to provide protection for individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties." *Southers v. City of Farmington*, 263 S.W.3d 603, 611 (Mo. banc 2008). "Its goal is also to permit public employees to make judgments affecting public safety and welfare without concerns about possible personal liability." *Id.*

Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts. *Southers*, 263 S.W.3d at 610; *Woods*, 471 S.W.3d at 391. It does not provide public employees immunity for torts committed when acting in a ministerial capacity. *Southers*, 263 S.W.3d at 610; *Woods*, 471 S.W.3d at 392.

"Whether an act can be characterized as discretionary depends on the degree of reason and judgment required." *Southers*, 263 S.W.3d at 610. A discretionary act requires the exercise of reason in adapting the means to an end and of discretion in determining how or whether an act should be done or course pursued. *Id.*; *Woods*, 471 S.W.3d at 392. In contrast, a ministerial function is one of a clerical nature that a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed. *Id.* A public employee is only liable for a ministerial act if the conduct violates either a duty imposed by statute or regulation or a departmentally-mandated duty.

*A.F. v. Hazelwood Sch. Dist.*, 491 S.W.3d 628, 631 (Mo. App. E.D. 2016); *Woods*, 471 S.W.3d at 392; *Nguyen*, 353 S.W.3d at 730. A departmentally-mandated duty may arise from sources other than statutes or regulations such as departmental rules, the orders of a superior, or the nature of the employee's position. *A.F.*, 491 S.W.3d at 631-32; *Woods*, 471 S.W.3d at 392-93; *Nguyen*, 353 S.W.3d at 730. Whether an act is discretionary or ministerial is a determination made on a case-by-case basis considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity. *Southers*, 263 S.W.3d at 610; *Woods*, 471 S.W.3d at 393.

In their motion for summary judgment, Edwards and Davis argued that official immunity barred Elias's negligence claim because they were performing a discretionary act in conducting the football practice. Instead of producing some form of evidence to the trial court in the record below establishing that the conduct of the football coaches was in direct contradiction to a school district rule, a statute, a regulation, a departmental policy, or even a direct order from a superior at Winnetonka High School, Elias's argument that official immunity should not apply in this case is that the coaches were no longer acting within their employment capacity when Davis suited up and scrimmaged with the team.

Elias's misplaced "outside the course and scope of employment" argument asserts that Davis's participation in the scrimmage did not arise naturally from the performance of his employment. To support his argument, Elias cited *Inman v. Dominguez*, 371 S.W.3d 921 (Mo. App. S.D. 2012), a case where an over-the-road truck driver stabbed another driver at a

truck stop. The *Inman* court, however, did *not* address the application of official immunity but instead whether the driver was within the course and scope of his employment for the purpose of respondeat superior. *Id.* at 924. The court determined that the driver's actions in stabbing the other driver were too outrageous and unexpected to ever be considered within the course and scope of his employment. *Id.* at 925-26. The driver acted with the personal goal of exacting revenge rather than in furtherance of his employer's interests, which further removed his conduct from the realm of his employment. *Id.* at 926.

Here, it simply cannot be said that Davis's physical participation in the scrimmage during practice was outside the course of his official duties as a football coach,[1] and Davis's argument ignores case precedent on the topic of official immunity. A scrimmage is a common tool used by a coach for the team to perform together on the field in simulated game situations and to develop game strategy. Under the limited facts in the summary judgment record, no evidence suggested that either coach was acting with any motive other than to teach and to prepare the football team during the football practice when Davis participated in the scrimmage.

Though it may indeed be a good idea for the school district to have a rule dictating the method and manner in which an adult high school football coach may physically participate with teenaged players in a high school football practice, the record before

us does *not* contain such a rule. Though it may indeed be a good idea for the high school principal or athletic director to have a departmental rule or to have provided direct guidance to school coaches about the method and manner in which an adult high school football coach may physically participate with teenaged players in a high school football practice, the record before us does *not* contain such a departmental policy or direct advice from these football coaches' superiors at Winnetonka High School. Though it may indeed have been a good idea for the Missouri State High School Athletics Association ("MSHSAA") to have a regulation relating to authorized physical participation of a high school football coach with the players in a practice environment at MSHSAA institutions, the record before us does *not* reference such a MSHSAA regulation.

Instead, for the first time on appeal, Elias attempts to inject the text of a purported MSHSAA regulation or ByLaw that he argues is both relevant to the direction given to coaches in the instruction of high school student athletes during football practices and constitutes a material dispute as to the ministerial duties of the coaches in the subject football practice.

First, the MSHSAA regulation cited on appeal is not relevant to the issues presented in the subject motion for summary judgment as it relates to the application of the official immunity defense.[2] Second, "[t]o show the existence of a genuine

---

1. A coach is routinely active in practice, teaching fundamentals and strategies of the sport. "[P]hysical demonstration of techniques by a coach is essential to learning in athletics." *Prejean v. E. Baton Rouge Parish Sch. Bd.*, 729 So.2d 686, 689 (La. Ct. App. 1999).

2. The purported MSHSAA Bylaw is 230.1, and it did not apply in this case. It provided: "Any student who represents a MSHSAA

member school in interscholastic athletics shall meet the standards contained in this section in addition to those in By-Laws 200-219." When Davis participated in the scrimmage with the team at practice, he was not a student representing Winnetonka High School in athletics between different schools. Bylaw 230.1, therefore, could not create a ministerial duty that Edwards and Davis breached.

issue under Rule 74.04, 'the record' must contain competent materials that evidence different accounts of essential facts." *Mueller v. Bauer*, 54 S.W.3d 652, 657 (Mo. App. E.D. 2001) (citing *ITT Commercial Finance*, 854 S.W.2d at 382). Rule 74.04(c)(2) requires that a response to a motion for summary judgment have attached "a copy of all discovery, exhibits or affidavits on which the response relies." Because Bylaw 230 was not in the record, it could not be considered by the trial court on the motion for summary judgment. Likewise, this court will also not consider the Bylaw on appeal. *See Kaufman v. St. Charles Cty.*, 30 S.W.3d 242, 245 (Mo. App. E.D. 2000) (where post-hearing briefs in the trial court contained attachments that were not part of the motion for summary judgment or the response to the motion, the appellate court would not consider the attachments). An exhibit that was not offered to the trial court is not part of the record on appeal, and an issue not expressly presented to or decided by the trial court is not preserved for appellate review. *Jos. A. Bank Clothiers, Inc. v. Brodsky*, 950 S.W.2d 297, 304 (Mo. App. E.D. 1997).

Consequently, we are left with a record in which Davis's scrimmaging with the team must be evaluated as part of the coaches' decision on how to conduct football practice that day. A coach's duty to conduct and supervise a football practice requires the exercise of discretion rather than the performance of routine tasks. *See Woods*, 471 S.W.3d at 393, 395 (determining how to conduct a wrestling practice is left to the discretion of the coach). It requires the coach to use his judgment. Though the wisdom of the judgment exercised by these coaches may be reasonably debatable, the record before us does not demonstrate a rule, regulation, policy, or direct order of a superior that was violated in exercising that judgment. Thus, Edwards and Davis were performing a discretionary act when they supervised and conducted the football practice in the manner in which they did in the practice in question. Their exercise of discretion was, therefore, protected by the doctrine official immunity as it relates to Elias's negligence claim. Accordingly, the trial court did not err in entering summary judgment in favor of them on Elias's negligence claim, and Elias's claims on appeal relating to the negligence claim are denied.

## Assault and Battery

On appeal, Elias contends that the trial court erred in granting summary judgment on his assault and battery claim. Elias argues that the record demonstrates a genuine dispute regarding whether he consented to or assumed the risk of injury.[3] We agree.

In amateur contact sports, liability for injury caused by a co-participant must be predicated on "willful and wanton or intentional misconduct." *McKichan v. St. Louis Hockey Club, L.P.*, 967 S.W.2d

---

3. Elias also claims that there is a genuine dispute as to whether he had fear of imminent physical harm, but this is not a basis upon which the subject motion for summary judgment sought relief. The legal basis for the coaches' motion for summary judgment on the assault and battery claim was Elias's consent to the contact with Davis, not Elias's inability to prove the element of fear of imminent physical harm. The trial court granted summary judgment without discussion, and its judgment is deemed to be based on one or more of the arguments asserted within the motion. *Bueneman v. Zykan*, 181 S.W.3d 105, 110 (Mo. App. E.D. 2005). Because the argument regarding the element of fear of imminent physical harm was not raised in the motion for summary judgment and thus not relied on by the trial court in its judgment, we need not and do not address that issue on appeal.

209, 211 (Mo. App. E.D. 1998). Ordinary negligence principles are inapplicable in such cases because "conduct which might be 'unreasonable' in everyday society is not actionable because it occurs on the athletic field. In contact sports, physical contact and injuries among participants [are] inherent and unwarranted judicial intervention might inhibit the game's vigor." *Id.* at 212.

■■■■■ Although Elias pleaded his claim as "assault and battery," which is commonly done because battery is considered "the consummation of an assault," assault and battery are two distinct causes of action. *Devitre v. Orthopedic Ctr. of St. Louis, LLC*, 349 S.W.3d 327, 335 (Mo. banc 2011). Assault is " 'any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril.' " *Id.* (quoting *Phelps v. Bross*, 73 S.W.3d 651, 655 (Mo. App. E.D. 2002)). The elements of assault are: " '(1) defendant's intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent; and (3) apprehension of bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct.' " *Id.* (quoting *Phelps*, 73 S.W.3d at 656). Battery is an " 'intended, offensive bodily contact with another person.' " *Devitre*, 349 S.W.3d at 334 (quoting *Cooper v. Albacore Holdings, Inc.*, 204 S.W.3d 238, 246 (Mo. App. E.D. 2006)). *See also Phelps*, 73 S.W.3d at 656. Assault and battery are intentional torts. *Hockensmith v. Brown*, 929 S.W.2d 840, 845 (Mo. App. W.D. 1996).

The manner in which Missouri Approved Instructions, Civil ("MAI") directs the sub-

mission of these topics to a jury in a battery context sheds light on our discussion in our ruling today. The verdict directing instruction and the affirmative defense instruction for a battery action state as follows:

MAI 23.02 [1990 Revision] Battery

Your verdict must be for plaintiff if you believe:

First, defendant intentionally [4] *(here describe act such as "struck")* plaintiff, and

Second, defendant thereby caused plaintiff bodily harm.

*[unless you believe that plaintiff is not entitled to recover by reason of Instruction Number _____ *(here insert number of affirmative defense instruction)* ].

MAI 32.08 [1969 New] Battery Actions—Consent

Your verdict must be for defendant if you believe that plaintiff, by words or conduct, consented to the acts of defendant and the reasonable consequences thereof.

■■■■■ In amateur contact sports cases, the doctrines of assumption of risk and consent must be considered. *McKichan*, 967 S.W.2d at 212. The basic principle of these defenses is that if a person voluntarily consents to accept the danger of a known and appreciated risk, that person is barred from recovering damages for an injury resulting from that risk. *Coomer v. Kansas City Royals Baseball Corp.*, 437 S.W.3d 184, 191 (Mo. banc 2014); *Ross v. Clouser*, 637 S.W.2d 11, 14 (Mo. banc 1982).

■■■■■ "In general, a voluntary participant in any lawful sport assumes all risks that reasonably inhere to the sport insofar as they are obvious and usually incident to

---

4. Edwards and Davis did not move for summary judgment on Elias's claims of assault and battery on the basis of official immunity, in likely recognition of the fact that the defense does not apply to intentional torts. "Even a discretionary act ... will not be

protected by official immunity if the conduct is willfully wrong or done with malice or corruption." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008) (footnote omitted).

the game." *McKichan*, 967 S.W.2d at 212. *See also Martin v. Buzan*, 857 S.W.2d 366, 369 (Mo. App. E.D. 1993) ("[P]ersons participating in sports may be held to have consented, by their participation, to those injuries which are reasonably foreseeable consequences of participating in the competition."). "Under contact sports analysis as applied to amateur sports, participants in team sports assume greater risks of injury than nonparticipants or participants in noncontact sports." *McKichan*, 967 S.W.2d at 212. "Taking part in a game manifests a willingness to submit to such bodily contacts or restrictions of liberty as are permitted by its rules or usages." RE-STATEMENT (SECOND) OF TORTS § 50 cmt. b (1965).

▮ The concepts of assumption of risk and consent must be analyzed on a case-by-case basis, and whether one *player's* conduct causing injury to another is actionable hinges upon the facts of an individual case. *McKichan*, 967 S.W.2d at 212 (citing *Ross*, 637 S.W.2d at 14). Relevant factors to consider include:

> the specific game involved, the ages and physical attributes of the participants, their respective skills at the game and their knowledge of its rules and customs, their status as amateurs or professionals, the type of risks which inhere to the game and those which are outside the realm of reasonable anticipation, the presence or absence of protective uniforms or equipment, the degree of zest with which the game is being played, and other factors.

*Id.* (citing *Ross*, 637 S.W.2d at 14).

By participating in high school football, Elias voluntarily consented to the risks that reasonably inhere to the sport. Those risks included physical contact and collisions with other *players*. The limited facts presented in the summary judgment record, however, go beyond the circumstances of physical contact in the course of playing organized high school football. Davis was an adult in full pads and helmet scrimmaging with teenaged members of the high school football team, which he had never done before that day. The record is devoid of any evidence of Davis's skill level or football experience. And as a coach, he was in a position of authority, which could have affected how Elias reacted before or during the play. For example, where an adult football coach barks a command to the teenagers on his team that they will participate in trying to tackle the adult Coach Davis, it may be reasonably debatable whether a teenaged child such as Elias had "consented" to such activity. It cannot be said, therefore, that the physical contact with his coach was a reasonably foreseeable consequence of participating in high school football. Reasonable persons could disagree on whether sixteen-year-old Elias voluntarily consented to the collision with Davis. At the very least, whether Elias consented to, or assumed the risk of, the contact with Davis is a proper determination for the jury.

We therefore grant the appellate relief requested by Elias on appeal as to claims relating to assault and battery, and the summary judgment entered on Elias's assault and battery claims is, therefore, reversed, and the case is remanded for further proceedings consistent with this opinion.

### Conclusion

The summary judgment in favor of Edwards and Davis on Elias's negligence claim is affirmed. The summary judgment in favor of Edwards and Davis on Elias's assault and battery claims is reversed, and the case is remanded for further proceedings consistent with this opinion.