Margie N. WOODS, Appellant,

Kimberly J. Woods, Appellant,

Derek C. Woods, Appellant,

v.

Catherine L. KELLEY, Defendant,

City of Grandview, Missouri, Respondent.

No. WD 52928.

Missouri Court of Appeals,
Western District.

Submitted Jan. 9, 1997.

Decided April 1, 1997.

Motion for Rehearing and/or
Transfer to Supreme Court
Denied May 27, 1997.

Application to Transfer Denied
Aug. 19, 1997.

David M. Byrn, Blue Springs, for appellant.

Robert O. Jester, Kansas City, for respondent and defendant.

Before LAURA DENVIR STITH, P.J., and SMART and EDWIN H. SMITH, JJ.

SMART, Judge.

On September 11, 1993, Max R. Woods was killed and his wife, Margie Nadine Woods, was injured in an automobile collision on Highway 150, within the city limits of Grandview, Missouri. The driver of the other vehicle involved in the collision, Catherine Kelley, was a member of the Grandview Board of Aldermen. Kelley also was a volunteer at Shelton House, a historic home owned by the city of Grandview. Margie Nadine Woods, the surviving spouse of Max Woods, and Kimberly and Derek Woods, the surviving children of Max Woods, filed a wrongful death suit against Catherine Kelley. Mrs. Woods also filed a personal injury claim. Plaintiffs amended their petition to join Grandview as a defendant, alleging that Kelley was a "public employee" of Grandview. Kelley was subsequently dismissed from the action, pursuant to settlement. The allegation that Kelley was a "public employee" was made in order to invoke § 537.600, RSMo 1994, the statute that provides, in some instances, for a waiver of sovereign immunity. Section 537.600.1(1) waives the city's immunity for injuries resulting from a public employee's negligent operation of a motor vehicle. Grandview filed a motion for summary judgment. The plaintiffs filed a response, and a motion for partial summary judgment. The trial court granted Grandview's motion. The Woodses appeal, claiming: (1) the trial court erred in concluding that Kelley was not a public employee under § 537.600.1, RSMo 1994 because the undisputed facts establish that Grandview exercised control over Kelley's activities; and (2) the trial court erred in concluding that § 537.600 was the exclusive means by which plaintiff could attempt to state a claim against the city. Because we hold that Ms. Kelley was not a "public employee" of Grandview, we affirm.

Catherine Kelley was a member of the Grandview Board of Alderman at the time of the collision described herein. Ms. Kelley also often volunteered her time at a historic home owned by the City of Grandview called Shelton House. Although Grandview's Parks and Recreation Department is ultimately responsible for maintenance on the house, Kelley volunteered to do things around the house, including some maintenance and landscaping. Kelley was not paid for her work at Shelton House. Such work was not an expected part of her duties as alderman. The city did not set any schedule of dates and times for Kelley's work, nor did it monitor the work. No instructions as to what was to be done were given Kelley. Although the city was aware that Kelley was providing volunteer services at the house, Kelley frequently operated on her own initiative, generally without informing the city in advance of the nature of those services. Sometimes Kelley was reimbursed her expenses and at other times she did not submit the expenses for reimbursement. Kelley had her own key to Shelton House, and often worked independently of any Parks and Recreation personnel.

On the morning of September 11, 1993, Kelley went to a nursery to pick up some trees to plant at Shelton House. She did not pick up the trees because the nursery was not open when she arrived. Carl Stadler, the Director of Parks and Recreation in Grandview, stated in deposition testimony that, although he knew that Kelley was planning to engage in landscaping, he did not know what Kelley was doing on the day in question.

The trial court found that Kelley was not a "public employee" within the meaning of § 537.600, because there was no evidence presented that Grandview controlled Kelley's method of work. The court also found that § 537.600 provided the exclusive remedy, and that the plaintiffs could not pursue a common law negligence claim independent of the statute. The Woodses appeal.

## SUMMARY JUDGMENT

Appellate review of a summary judgment is essentially a *de novo* review. *Rice v.* *Hodapp*, 919 S.W.2d 240, 243 (Mo. banc 1996). Review of the record is done in the light most favorable to the party against whom the judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The burden is on the moving party to establish that it is entitled to judgment as a matter of law. *Id.* at 382. Evidence in the record presenting a genuine issue of material fact will defeat a movant's right to summary judgment. *Id.* For an issue to be genuine "implies that the issue, or dispute, must be a real and substantial one—one consisting not merely of conjecture, theory and possibilities." *Id.* at 378. Therefore, the dispute must be more than simply argumentative, frivolous or imaginary. *Id.* at 382. If the trial court's grant of summary judgment is sustainable on any theory as a matter of law, then the judgment must be sustained. *City of Washington v. Warren County*, 899 S.W.2d 863, 868 (Mo. banc 1995). Once the criteria established by Rule 74.04 have been met, establishing a right to judgment as a matter of law, the non-movant must show in some way that any one or more of the material facts presented by the movant is open to genuine dispute. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381–82.

## SOVEREIGN IMMUNITY

The Woodses claim that the trial court erred in concluding that Kelley was not a public employee because the undisputed facts in the case show that Grandview exercised control over Kelley's activities, and had the right to control Kelley's activities in maintaining Shelton House. Because Kelley was not acting in her capacity as alderman when the collision occurred, for the Woodses to recover, they must prove that Kelley's activities as a volunteer at Shelton House made her a public employee, and that she was acting in that capacity at the time of the collision.

In *Jones v. State Highway Comm'n*, 557 S.W.2d 225 (Mo. banc 1977), the Missouri Supreme Court abrogated the common law doctrine of sovereign immunity. The doctrine was reinstated, in a modified form, by legislative action. *See Kanagawa v. State By*

*and Through Freeman,* 685 S.W.2d 831, 834 (Mo. banc 1985). In order to soften the sometimes severe effects of the doctrine, the legislature provided for waiver of sovereign immunity in certain instances. *Id.* Section 537.600, RSMo 1994, provides:

> 1. Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances:

> (1) Injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles or motorized vehicles within the course of their employment;

Provisions in the statute waiving sovereign immunity are to be narrowly construed. *Fantasma v. Kansas City Bd. of Police Comm'rs,* 913 S.W.2d 388, 391 (Mo.App. 1996).

▆ The trial court decided that "Kelley was a volunteer who was in no way the City's employee." In order to determine whether Kelley, in her capacity as a volunteer at Shelton House, was a public employee pursuant to § 537.600.1(1), the traditional common law doctrine of vicarious liability is examined. *See Bowman v. State,* 763 S.W.2d 161, 164 (Mo.App.1988). Liability based upon this theory requires evidence of a master-servant relationship. *Wilson v. St. Louis Area Council, Boy Scouts of Am.,* 845 S.W.2d 568, 570 (Mo.App.1992). The test for the master-servant relationship is. whether the person sought to be established as the master has the right or the power to direct and control the physical conduct of the other person. *Balderas v. Howe,* 891 S.W.2d 871, 873–74 (Mo.App.1995). Whether liability is established turns upon the unique facts in each case. *Sharp v. W. & W. Trucking Co.,* 421 S.W.2d 213, 220 (Mo. banc 1967). No single test is considered conclusive on the issue of the right to control. *Id.*

▆ The Woodses argue that the right to control was established in this case, and that the trial court erred in granting Grandview's motion for summary judgment and in denying their motion for partial summary judgment. They depend upon the fact that Grandview had control over the landscaping and maintenance services at Shelton House; that Grandview had knowledge that Kelley was performing landscaping services at Shelton House; that Grandview could have told Kelley not to do a particular project; that Grandview had a choice whether or not to approve Kelley's expenditures; and that Grandview could have refused to accept Kelley's services at any time. These facts do not establish the necessary relationship. Although this evidence establishes a general type of control over Kelley, it is the same type of control generally exercised over an independent contractor.

The control necessary to establish a public employee relationship is much more specific and direct. In *Archer v. Outboard Marine Corp.,* 908 S.W.2d 701, 703 (Mo.App.1995), summary judgment was entered in favor of a fishing tournament sponsor in a case involving a collision between the boat of a tournament competitor and that of a boat not involved in the tournament. *Id.* at 701. The appellants brought suit against the Outboard Marine Corporation (OMC), a sponsor of the tournament, and the Fisherman's AmBASSadors Association (FAA). *Id.* The appellants attempted to establish that OMC was vicariously liable under the doctrine of *respondeat superior.* The court, in examining whether such a relationship existed, explains:

> The control of the alleged master must be complete and unqualified. It must be authoritative control which includes the details of how the work is performed. For OMC to be deemed FAA's or Word's master, it would have had to have the authority to control the manner, method, and means for FAA's and Word's performance.

*Id.* at 703 (citation omitted).

Similarly, in *Wilson,* the relationship between the St. Louis Area Council of the Boy Scouts of America and scout troop leaders was examined where a thirteen year old scout was electrocuted on a trip to Fort Leonard Wood, Missouri. *Wilson,* 845 S.W.2d at 570. The court recognized that in certain situations a volunteer may be regard-

ed as the servant of someone who accepts his services. *Id.* at 571. The court stated that a master-servant relationship "begins only when the person charged as master has the right to direct the method by which the master's service is performed." *Id.* at 570–71 (emphasis added).

The court in *Studebaker v. Nettie's Flower Garden, Inc.*, 842 S.W.2d 227, 229 (Mo.App. 1992), expressed the relationship in slightly different terms, stating:

> If there was no right to control there is no liability; **for those rendering services but retaining control over their own movements are not servants.** The master-servant relationship arises when the person charged as master has the right to direct the method by which the master's service is performed.

(Citations omitted)(emphasis added).

Plaintiffs cite *Bowman v. State,* 763 S.W.2d 161 (Mo.App.1988) as support for their petition. In *Bowman,* a juvenile charge of the state was injured during an assignment to collect trash. Bowman's right arm was crushed in a trash truck operated by a state employee when another juvenile, Brenda Savu, pushed a lever to compact the trash. *Id.* at 162. In holding that Savu was a "public employee," this court stressed the control exercised by the State over her performance. *Id.* at 166. In this case, however, Grandview did not exercise control over Kelley's projects at Shelton House.

There is no evidence that Grandview controlled the manner, method or means of Kelley's services at Shelton House. Kelley volunteered to do things around the house that she wanted to do, including some of the maintenance and some of the landscaping. Grandview did not set any schedule of dates and times for Kelley's work, nor did it monitor the work or give instructions as to what was to be done and where. Although Grandview was aware that Kelley was providing volunteer services at the house, it was often not informed in advance of what those services would be. Kelley had her own key so that she could come and go as she pleased. Grandview paid for some of the materials associated with Kelley's projects. Kelley herself paid for others. The evidence shows that Kelley herself, and not City of Grandview, was in control of her services.

## COMMON LAW CLAIMS

The Woodses next contend that the trial court erred in granting judgment for defendant in that sovereign immunity does not bar their claim because § 537.600.1(1) is not the exclusive means of pursuing a common law negligence claim against the city. The Woodses argue that the common law claims remain viable because of the trial court's conclusion that the statutory exception did not apply. However, the necessity of vicarious liability makes their contention moot. If Kelley is not a "public employee," then Grandview is not vicariously liable for Kelley's actions, regardless of whether they sue under § 537.600 or purport to sue under traditional common law rules. If Ms. Kelley is not a "public employee," then she could not at the time of the accident have been operating within the course and scope of her employment or agency. Consequently, even if there were no such thing as sovereign immunity, there would be no liability against the city on a theory of respondeat superior liability.

The judgment of the trial court is affirmed.

BRECKENRIDGE and EDWIN H. SMITH, JJ., concur.