

# In the
# Missouri Court of Appeals
# Western District

DEVIN WOODS,

        **Appellant,**

v.

CARL WARE,

        **Respondent.**

**WD78040**

**OPINION FILED:**

**September 29, 2015**

---

**Appeal from the Circuit Court of Jackson County, Missouri
The Honorable Justine Elisa Del Muro, Judge**

**Before Division One:
Cynthia L. Martin, P.J., Joseph M. Ellis, and James Edward Welsh, JJ.**

Devin Woods appeals the circuit court's grant of summary judgment in favor of Carl Ware on Woods's claim of negligence. Woods contends that the circuit court erred in finding that the doctrine of official immunity shielded Ware from liability. We affirm.

When considering appeals from summary judgments, we review the record in the light most favorable to the party against whom judgment was entered, and we afford that party the benefit of all reasonable inferences. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record established that Woods was a former student at Grandview Middle School and a former member of the Grandview Middle School

wrestling team.  Ware was the head wrestling coach of Grandview Middle School and was an employee acting within the scope and course of his employment with Grandview C-4 School District.  On December 5, 2008, Ware conducted a wrestling practice at Grandview High School.  The practice included both high school wrestlers and middle school wrestlers, and Woods was present at the practice.  Woods, an eighth grader at the time, claims that he was injured during the practice and seeks damages from Ware on the basis of negligence.  Specifically, Woods avers he was injured participating in a drill performed with another wrestler who was a member of the Grandview High School wrestling team.  Ware was the only faculty member present at the practice and was the sole coach in-charge of the practice.

In his first amended petition for damages, Woods alleged that Ware "owed Plaintiff a ministerial duty to provide for Plaintiff Devin Woods' safety and welfare by ensuring that Plaintiff be properly supervised and instructed while engaged in school activities, specifically wrestling practice."  Specifically, Woods alleged that Ware "breached the duty owed to Plaintiff Devin Woods by instructing him to wrestle a much more experienced and larger High School wrestler[.]"

Grandview C-4 School District policies provide:

Grandview CSD #4—Safety Program—EB-C.GNV:  Including but not limited to, the following:  Proper supervision of students and other citizens using the school facilities will be required.

Grandview CSD #4—Staff Conduct and Ethics—GBCB-C.GNV: Including, but not limited to, the following: . . . (8) Supervise all students at all times during the school day; and during any school activity. . . . (21) Recognize the difference among students and seek to meet individual needs.

Grandview CSD #4—District-Sponsored Extracurricular Activities and Groups—IGD-C.GNV:  Including, but not limited to, the following:  All extracurricular activities must have an appointed sponsor, advisor, or coach.  It shall be the duty of each individual to attend all meetings, functions, or practices

2

of the relevant group, advise and supervise students and keep the appropriate principal informed regarding activities.

Further, MSHSAA Bylaw 301 provides:

a. **Practice** – Any attempt of a coach or teacher to teach any phase of a game or activity to any squad or part of a squad or to have any squad or part of a squad engage in drills under the supervision of a coach, or from directions provided by the coach, involving what has already been taught. Try-outs, so-called "skull drills," "orientation meetings," etc., are considered practices. Except as provided for in Bylaws 232.0-c and 238.2-a, *a junior or senior high school student shall be permitted to participate in school practices only with teams of the school where he/she is properly enrolled.*[1]

Ware filed a motion for summary judgment asserting that he was entitled to the protection afforded by the doctrine of official immunity because his actions were in the course and scope of his responsibilities as the wrestling coach at Grandview Middle School and were fully discretionary. In particular, he asserted that he was entitled to judgment as a matter of law because the undisputed facts established that there were no statutory or departmentally-mandated duties regarding how he was to conduct the wrestling practice. The circuit court agreed and granted Ware's motion for summary judgment. Woods appeals.

Our review of a summary judgment is *de novo*. *ITT Commercial*, 854 S.W.2d at 376. "The propriety of summary judgment is purely an issue of law." *Id*. We will affirm the circuit court's grant of summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id*. at 380; Rule 74.04. A "defending party" may establish a right to judgment by showing:

(1) facts that negate any one of the claimant's elements facts [sic], (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no

---

[1]We added the emphasis.

3

genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.

*ITT Commercial*, 854 S.W.2d at 381 (emphasis omitted). "Where summary judgment has been granted based upon an affirmative defense of official immunity, 'we must consider whether there is a genuine dispute as to the existence of facts necessary to support this properly pleaded affirmative defense.'" *Nguyen v. Grain Valley R-5 School Dist.*, 353 S.W.3d 725, 729 (Mo. App. 2011) (quoting *Conway v. St. Louis Cnty.*, 254 S.W.3d 159, 164 (Mo. App. 2008)).

In his first point on appeal, Woods contends that the circuit court erred in granting summary judgment because Ware failed to meet his burden to prove the absence of genuine issues of material fact regarding the applicability of his defense of official immunity. Woods asserts that he demonstrated a genuine dispute as to four of the alleged material facts that Ware claimed were uncontroverted and that were necessary to obtain judgment as a matter of law.

In support of his motion for summary judgment, Ware attached a Statement of Uncontroverted Facts, which included these four statements:

> The Missouri State High School Activities Associations' ("MSHSAA') regulations titled "MSHSSA Wrestling Junior High School Weight Classes" and "Responsibility for Supervision" do not apply or concern wrestling practices conducted by member schools, including Grandview Middle School and Grandview High School because wrestling practices conducted by schools are not considered interscholastic events by MSHSAA even in the case of joint practices with other schools. See Affidavit of Kerwin Urhahn, . . . Exhibit A ¶¶ 2 and 3.

> In 2008 there were no District mandated policies or procedures regarding how wrestling coaches should conduct their practices, including how wrestlers should be paired and what exercises or drills they performed. See Affidavit of Stephen Robertson, . . . Exhibit B ¶3.

> The decisions on how to conduct wrestling practice were left to the judgment and discretion of the wrestling coach. See Affidavit of Stephen Robertson, . . . Exhibit B ¶3.

4

It was up to the discretion of the wrestling coach how to supervise students using school facilities, and how to recognize the difference among student and seek to meet individual needs. See Affidavit of Stephen Robertson, . . . Exhibit B ¶3.

In response to these statements of uncontroverted fact, Woods objected to the affidavits relied on to support the statements of fact and asserted that the affiants' comments were "not factual statements, but improper legal conclusions, and should not be considered in ruling" upon the motion for summary judgment. Further, as to the last three statement of facts, Ware objected on the grounds that the affiant was incompetent and lacked sufficient knowledge to testify regarding whether there were any policies that pertained to wrestling practice and how to conduct a wrestling practice.

In ruling upon the motion for summary judgment, the circuit court specifically said that it "did not take into consideration the affidavits . . . when rendering [its] decision." In its decision, the circuit court merely set forth the school district's policies and the MSHSAA bylaw at issue and determined that as a matter of law[2] that they did not create a ministerial duty. The court determined that Ware's duties to properly supervise and attend practices as stated in the school district's policies and the MSHSAA Wrestling Manual were discretionary and that Ware did not breach any ministerial duty. Hence, to the extent that Woods contends that he controverted the aforementioned statement of facts by objecting to the affidavits that Ware relied on as support for the statements, his contention is without merit because the circuit court did not even rely on the affidavits in granting Ware's motion for summary judgment.

---

[2]In his objections to the statement of uncontroverted facts, Woods even argued that the affiants were making legal conclusions that should not be considered in ruling upon the motion for summary judgment.

In his second point on appeal, Woods asserts that he demonstrated 11 additional material facts, which created genuine issues of fact as to the applicability of Ware's defense of official immunity. The 11 additional facts identified by Woods were:

1. This was Defendant's Ware's first time working as a wrestling coach for a school district.

2. Defendant Ware conducted a wrestling practice which included both High School wrestlers and Middle School wrestlers at Grandview High School.

3. Defendant Ware was the only faculty member at said practice.

4. Defendant Ware was the sole coach in-charge of said practice.

5. Plaintiff Devin Woods was in eighth grade at Grandview Middle School, was a member of the Grandview Middle School Wrestling team, and attended said practice.

6. As head coach of the Grandview Middle School Wrestling Program, Defendant Ware was responsible for being accustomed with and follow the rules and regulations of MSHSAA for 2008-2009 Wrestling Season.

7. MSHSAA bylaw 301 applies to wrestling practice.

8. MSHSAA bylaw 301 prohibits practice between a member of junior high school and member high school.

9. Defendant Ware conducted a wrestling practice which included both High School wrestlers and Middle School wrestlers at Grandview High School in violation of MSHSAA bylaw 301.

10. Mr. Robertson, the athletic director of Grandview C-4 School District, expected Defendant Ware to follow the [school district's] Policies[.][3]

11. The Grandview MSHSAA school members are expected to report to MSHSAA a violation such as the "practice" that was conducted by Defendant Ware.

---

[3]Woods' statement of facts quoted the school district's policies that we listed earlier in our statement of facts: Grandview CSD #4—Safety Program—EB-C.GNV; Grandview CSD #4—Staff Conduct and Ethics—GBCB-C.GNV; and Grandview CSD #4—District-Sponsored Extracurricular Activities and Groups—IGD-C.GNV.

6

Ware concedes that, although he objected to all the above mentioned facts on the basis that they were not material and were not genuine facts in dispute, he admitted all these facts except Fact No. 6. None of these facts, however, precluded the entry of summary judgment in this case as will be more fully explained *infra* in discussing Woods's third point on appeal. Indeed, Woods offers no explanation as to why any of these facts are material to the motion for summary judgment. Woods merely asserts that these additional facts negated the material facts raised by Ware.

In his third point on appeal, Woods asserts that the circuit court erred in granting summary judgment in favor of Ware based on official immunity because (1) Ware failed to properly plead the affirmative defense of official immunity; (2) Ware was not a "public official," and (3) a genuine dispute existed as to whether Ware breached ministerial duties as opposed to discretionary duties. We disagree.

"Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts." *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. banc 2006). "Official immunity is intended to provide protection for individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties." *Southers v. City of Farmington*, 263 S.W.3d 603, 611 (Mo. banc 2008). "Its goal is also to permit public employees to make judgments affecting public safety and welfare without concerns about possible personal liability." *Id*.

Woods argues that Ware failed to properly plead the affirmative defense of official immunity. In particular, Woods asserts that Ware failed to plead specific facts showing that he was entitled to claim official immunity as a defense. We disagree. Rule 55.08 requires:

7

In pleading to a preceding pleading, a party shall set forth all applicable affirmative defenses and avoidances[.] A pleading that sets forth an affirmative defense or avoidance shall contain a short and plain statement of the facts showing that the pleader is entitled to the defense or avoidance.

"When determining the sufficiency of the allegations setting forth a defendant's affirmative defense, we may look to the responsive pleadings as a whole." *Roth v. Roth*, 176 S.W.3d 735, 738 (Mo. App. 2005). Here, Ware plainly asserted the affirmative defense of official immunity. In addition, Ware admitted Woods's allegations in the amended petition that he was an employee of a school district acting in the scope and course of his duties for his employer. Ware denied Woods's allegation in the amended petition that Ware owed Woods a ministerial duty to "properly supervise and instruct" Woods while engaged in wrestling practice. Ware's allegations in the responsive pleading as a whole constitute a short and plain statement of the facts supporting the defense of official immunity.

Woods further argues that, even if Ware properly pled his affirmative defense of official immunity, Ware is not entitled to the protection afforded by the doctrine of official immunity because he is not a public official. In *Southers v. City of Farmington*, the Missouri Supreme Court declared that official immunity protects all public employees "from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." 263 S.W.3d at 610. To the extent that Woods claims that official immunity applies only to public employees whose actions are purely governmental in nature, his contention is without merit. "Missouri courts have routinely extended official immunity to discretionary acts even when the public official's actions were not governmental in nature." *Richardson v. City of St. Louis*, 293 S.W.3d 133, 141 (Mo. App. 2009). As the *Richardson* court recognized, the Missouri Supreme Court has "thoroughly discussed the scope of official immunity and did not

8

restrict immunity only to those actions which 'go to the essence of governing.'" *Id.* (citing *Southers*, 263 S.W.3d at 610-11).[4] Thus, as a coach hired by a public school district, Ware is a public employee entitled to official immunity for his discretionary acts. *Nguyen*, 353 S.W.3d at 731; *Boever v. Special School Dist. Of St. Louis Cnty.*, 296 S.W.3d 487, 491-92 (Mo. App. 2009).

As a public employee, the true issue in this case is whether Ware established through undisputed facts that the alleged negligence occurred while he was performing a discretionary act. Woods contends that a genuine dispute existed as to whether Ware breached ministerial duties as opposed to discretionary duties.

Official immunity is designed to protect individual public employees who must exercise discretion in performance of their duties. *Davis*, 193 S.W.3d at 765. "The official immunity doctrine, however, does not provide public employees immunity for torts committed when acting in a ministerial capacity." *Southers*, 263 S.W.3d at 610. "Whether an act can be characterized as discretionary depends on the degree of reason and judgment required." *Id.* A discretionary act requires the exercise of reason and discretion in determining how an act should be done or what course of action should be pursued. *Davis*, 193 S.W.3d at 763. A ministerial function is one which is "'of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to

---

[4]Woods relies on several cases in support of his argument that Ware is not a public officer entitled to assert the defense of official immunity. Those cases include *State ex rel. Eli Lilly and Co. v. Gaertner*, 619 S.W.2d 761 (Mo. App. 1981); *Jackson v. Roberts*, 774 S.W.2d 860 (Mo. App. 1989); *Lehmen v. Wansing*, 624 S.W.2d 1 (Mo. banc 1981); *Spearman v. Univ. City Public School Dist.*, 617 S.W.2d 68 (Mo. banc 1981), *Kersey v. Harbin*, 591 S.W.2d 745 (Mo. App. 1979). These cases, however, were decided before the Missouri Supreme Court issued its decision in *Southers*, holding that the official immunity doctrine protects all public employees "from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." 263 S.W.3d at 610. This court and this court's Eastern District, relying on the Missouri Supreme Court's clarification of the doctrine of official immunity in *Southers*, both found that teachers are public employees who are protected from liability for negligent acts committed during the course of their official duties for the performance of discretionary acts. *Nguyen*, 353 S.W.3d at 731; *Boever*, 296 S.W.3d at 492; *see also Nine v. Wentzville R-IV School Dist.,* No. 4:11-CV-353 CEJ, 2011 WL 2564767 (E.D. Mo. June 28, 2011) (teachers are public officials entitled to official immunity).

9

his own judgment or opinion concerning the propriety of the act to be performed.'" *Id*. (citation omitted). To be liable for official acts, a public employee must violate either a departmentally-mandated duty or a duty imposed by statute or regulation. *Nguyen*, 353 S.W.3d at 730. "[A] 'departmentally-mandated duty' may clearly arise from sources other than statutes or regulations. Such a duty can arise from departmental rules, the orders of a superior, or the nature of the position for which the defendant was employed." *Id*. "The determination of whether an act is discretionary or ministerial is made on a case-by-case basis, considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity." *Southers*, 263 S.W.3d at 610.

Woods asserts that the allegations of negligence in this case involve the failure of Ware to carry out his ministerial duties of following the school district's and MSHSAA's policies, bylaws, rules and regulation concerning the supervision of students. Woods claims that Ware violated ministerial duties involved in four different Grandview C-4 School District policies in failing to supervise the wrestling practice. Those policies are:

> Grandview CSD #4—Safety Program—EB-C.GNV: Including but not limited to, the following: Proper supervision of students and other citizens using the school facilities will be required.

> Grandview CSD #4—Staff Conduct and Ethics—GBCB-C.GNV: Including, but not limited to, the following: . . . (8) Supervise all students at all times during the school day; and during any school activity. . . . (21) Recognize the difference among students and seek to meet individual needs.

> Grandview CSD #4—District-Sponsored Extracurricular Activities and Groups—IGD-C.GNV: Including, but not limited to, the following: All extracurricular activities must have an appointed sponsor, advisor, or coach. It shall be the duty of each individual to attend all meetings, functions, or practices of the relevant group, advise and supervise students and keep the appropriate principal informed regarding activities.

10

None of these policies specifically define what it means to properly supervise or conduct a wrestling practice. Determining how to supervise and conduct the wrestling practice is left to the discretion of the coach. The policies do not mention terms such as "safety" and "welfare" as alleged in Woods's first amended petition and do not speak to weight restrictions of wrestlers or how to pair wrestlers during practices. The policies merely dictate that students should be "properly supervised" and that a coach should "seek to meet individual needs." These dictates do not create a ministerial duty owed by Ware. Instead, the policies leave it to the discretion of the wrestling coaches to determine how to supervise students and how to recognize the difference among students and seek to meet their individual needs.

This court's decision in *Warren v. State*, 939 S.W.2d 950 (Mo. App. 1997), is analogous. In *Warren*, a prison inmate, who was injured while working with a table saw in a prison furniture factory, sued prison officials, alleging that his injuries were caused by the table saw's not having a safety guard. *Id*. at 952. The inmate alleged that the prison officials violated a ministerial duty because a Missouri statute mandated the use of "suitable" equipment for the correctional industry and services program and a Department of Corrections regulation required "appropriate safety guards." *Id*. at 953. This court determined that the prison officials were protected by the official immunity doctrine. *Id*. at 954. Although the statute and regulation required "suitable" equipment and "appropriate" safety guards, the court concluded that neither the statute nor the regulation described what constituted "suitable" or "appropriate" safety equipment. *Id*. The court found that "[w]hat was suitable and appropriate was a matter left up to the judgment and discretion of the officials involved." *Id*. Thus, because a discretionary duty was involved, the circuit court declared that the prison officials' exercise of that discretion was protected by the

11

official immunity doctrine. *Id*. The same is true in this case. Just as it was left up to the prison officials to determine what constituted "appropriate" and "suitable" safety equipment, it was left up to Coach Ware to determine what constituted "proper supervision" and how to "recognize the difference among students and seek to meet individual needs."

In response to Ware's motion for summary judgment, Woods also argued that MSHSAA Bylaw 301(a) created a ministerial duty that Ware breached when he allowed Woods to practice with a high school wrestler.[5] To understand MSHSAA Bylaw 301(a), however, we must look at the entire bylaw and look at the context in which it appears. MSHSAA Bylaw 301, entitled "Definitions," provides:

> a. **Practice** -- Any attempt of a coach or teacher to teach any phase of a game or activity to any squad or part of a squad or to have any squad or part of a squad engage in drills under the supervision of a coach, or from directions provided by the coach, involving what has already been taught. Try-outs, so-called "skull drills," "orientation meetings," etc., are considered practices. Except as provided for in Bylaws 232.0-c and 238.2-a, *a junior or senior high school student shall be permitted to participate in school practices only with teams of the school where he/she is properly enrolled*.[6]

> b. **Conditioning** -- Any attempt by the coach to engage the student in specific physical activity, drills, and/or instruction involving physical activity designed to elevate the student's level of physical condition for a specific sport.

> c. **Scrimmage** -- Practice of two teams of the same squad under partial game conditions.

> d. **Game --** A game is any organized play between teams not of the same school. Whether or not officials are hired, admissions charged, etc., are not factors in determining whether the play constitutes a game. So-called "scrimmage games" cannot be played before the date of the first allowable game, must be

---

[5]On appeal, the only MSHSAA rule Woods relies on as creating a ministerial duty is MSHSAA Bylaw 301. In his first amended petition, Woods argued that other MSHSAA rules and regulations created ministerial duties that applied to wrestling practices. In this appeal, however, Woods has abandoned his reliance on other MSHSAA rules and regulations and relies solely on MSHSAA Bylaw 301.

[6]We added the emphasis.

12

counted as a game on the school's schedule, and only if the school has not scheduled the maximum number of games allowed.

   e. **Preseason Interschool Football Scrimmage --** A football practice event conducted on the Friday or Saturday of Week 8 of the Standardized Calendar involving three or four teams. Play occurs only under partial game conditions as defined in By-Law 350.

   f. **Athletic Jamboree --** An event in which each school competes 4 quarters or less. This shall be counted as a game of the school's schedule.

## RELATED QUESTION(S) AND ANSWER(S) BELOW

   Q1: *Our basketball coach wishes to "scrimmage" a neighboring school team. Is this permissible and will this count against our game limit?*

   A1: Yes. However, anytime a so-called scrimmage involves students from more than one high school, it is viewed to be an interscholastic contest. An interschool scrimmage cannot be played before the date of the first allowable game for the season, must be counted as a game on the school's schedule, and may be played only if the school has not scheduled the maximum number of games allowed.

   Q2: *Our school will have an open gym on Saturday afternoon following our boys basketball team practice. Our coach has advised our players they can stay and scrimmage against people in our community. Is this acceptable?*

   A2: No. During the school sport season a team may only practice with the school's teams.

First, it should be noted that MSHSAA Bylaw 301 sets forth definitions. In subsection (a), it provides the meaning of the term "practice" as that term is used in MSHSAA Bylaws. The definition of "practice" does not dictate how a coach should "properly supervise" or ensure the "safety and welfare" or the students engaged in the activity. It does not provide a ministerial duty for coaches to follow. Second, when read in context of the entire bylaw, MSHSAA Bylaw 301 merely provides a definition of "practice" to determine whether interscholastic competitions are occurring during practices and whether such practices would be counted as games for the purpose of determining the maximum numbers of games that a team may play during a season.

13

The bylaw is attempting to level the playing field between schools, making sure that teams are not gaining competitive advantages by practicing with other teams or having interscholastic scrimmages with other teams. The bylaw does not concern or provide any specificity about the manner in which a coach should conduct a practice. Indeed, the sole fact which determines whether a combined practice of middle school students and high school students is allowed by MSHSAA Bylaw 301 is whether the two schools have separate MSHSAA memberships;[7] it has nothing to do with safety. Indeed, it was perfectly compliant with MSHSAA Bylaw 301 for Grandview Middle School and Grandview High School to have a combined practice so long as the schools counted the practice as a game or a meet and did not exceed the permitted number of games or meets.

Thus, when read in context, the circuit court determined as a matter of law that MSHSAA Bylaw 301(a) did not create a ministerial duty. We agree. Ware was performing a discretionary act when he supervised and conducted the wrestling practice when Woods was injured. Because a discretionary duty was involved, Ware's exercise of that discretion is protected by the doctrine of official immunity.

Moreover, even if we assume the school district had adopted the school policies and MSHSAA bylaws as "departmentally mandated duties," the Missouri Supreme Court has held that "[p]ublic employees' conduct that is contrary to applicable statutes or policies can constitute evidence that their conduct was negligent, but that conduct does not remove their negligence from the protections of the official immunity or public duty doctrines where the provisions at issue indicate no intent to modify or supersede these common law immunity protections."

---

[7]Grandview Middle School and Grandview High School maintain separate memberships in MSHSAA. Thus, MSHSAA considers them to be two separate teams. The schools had the option of sharing a single membership but chose not to do so.

14

*Southers*, 263 S.W.3d at 617. In this case, nothing in the school district policies or MSHSAA bylaws supplant the common law immunity protections. Thus, the official immunity doctrine is unaffected by allegations of policy violations. *Rhea v. Sapp*, 463 S.W.3d 370, 379 (Mo. App. March 3, 2015) (court rejected appellant's argument that a departmental policy removed a fireman's discretion or otherwise rendered the fireman's activity ministerial).

We, therefore, conclude that the circuit court did not err in granting summary judgment in favor of Ware. No genuine issues of material fact remained, and Ware was entitled to judgment as a matter of law. We affirm the circuit court's grant of summary judgment.

/s/ JAMES EDWARD WELSH<br>James Edward Welsh, Judge

All concur.