

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| **MARCUS HALEY,** | ) | |
| | ) | |
| **Appellant,** | ) | **WD78509 Consolidated with** |
| | ) | **WD78517** |
| **v.** | ) | |
| | ) | **OPINION FILED:  February 9, 2016** |
| **ERLE BENNETT,** | ) | |
| | ) | |
| **Respondent,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **CHRIS SMOOT,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### Appeal from the Circuit Court of Saline County, Missouri
The Honorable Dennis A. Rolf, Judge

Before Special Division:  Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and
Zel M. Fischer, Special Judge

Marcus Haley ("Haley") appeals from the grant of summary judgment in favor of

Erle Bennett ("Bennett") and Chris Smoot ("Smoot") in Haley's negligence lawsuit filed

after Haley, a high school student, suffered injuries at a summer football camp.  Finding

no error, we affirm.

**Factual and Procedural Background**[1]

Haley participated in a multi-school summer high school football camp, known as the Hut Hut Team Camp ("the Camp"), in June 2011. Haley was a member of the Centralia High School football team.

Bennett was the head football coach at Centralia High School and was coaching the Centralia High School football team during the Camp. Bennett was employed by the Centralia School District as a physical education teacher and as the head football coach in June 2011. Bennett received a monthly salary from the school district that included a stipend that covered all of his duties as head football coach. Before attending the camp in June 2011, Bennett prepared a summer schedule of football-related activities and reviewed that schedule with the Centralia athletic director to determine if attending the camp complied with Missouri State High School Athletic Association ("MSHSAA") regulations. Bennett received permission from the Centralia School District to take the Centralia High School football team to the Camp, to travel to the camp on school district buses, to use school district equipment and jerseys, and to bring a school district provided athletic trainer to the Camp. The Centralia School District superintendent also attended to help Bennett supervise the athletes participating in the Camp.

Prior to attending the camp, Bennett decided that only sophomores, juniors, and seniors would be allowed to attend the camp. Bennett cleared that decision with the

---

[1]We view the record below in the light most favorable to the party against whom summary judgment was entered. *Reynolds v. Missouri Bd. of Prob. & Parole*, 468 S.W.3d 413, 415 (Mo. App. W.D. 2015).

athletic director. Bennett also determined how long the Centralia High School football team would attend the camp and how many games they would play.

Smoot was the head football coach at Clinton High School and was coaching the Clinton High School football team during the Camp. Smoot was employed by the Clinton School District as a teacher and as the head football coach in June 2011. Smoot had a nine-month teacher's contract with the Clinton School District and received a stipend to compensate him for all of his football related activities. Smoot's responsibilities as head football coach extended through the summer. Prior to attending the Camp, Smoot checked with the Clinton School District athletic director to determine if the Camp conflicted with other summer activities. The Clinton School District athletic director approved of Smoot's decision to attend the Camp. The Clinton High School football team traveled to the Camp on Clinton School District buses, wore school district uniforms, and used school district equipment. During the Camp, Smoot decided who his team would play against, which players would play on any given play, and whether his players were practicing in a safe manner.

Individual players had to pay a fee to the Camp in order to attend, but attendance at the Camp was not required to play football in the fall for either Centralia High School or Clinton High School. Referees were not at the Camp, but coaches agreed to look for rule infractions in addition to proper play execution and could stop play if they observed rule infractions.

Haley was playing in a full-pad, full-contact scrimmage at the Camp against the Clinton High School football team when he was injured by another player. Haley

contends that the tackle that resulted in his injury was an overly aggressive, below-the-waist hit after a play was over, and that the lack of adequate supervision caused the injury.

On April 30, 2012, Haley filed a first amended petition against Bennett and Smoot, among others,[2] alleging that Bennett and Smoot were negligent, resulting in Haley's injury. Haley alleged that both Bennett and Smoot were acting as employees and within the scope and course of their employment with their respective school districts. On June 13, 2012, Bennett filed a motion to be dismissed from Haley's first amended petition, claiming he was immune from suit because he was a public official. The trial court granted Bennett's motion on July 11, 2012. On October 11, 2012, Haley voluntarily dismissed his negligence claims against Smoot.

On August 4, 2014, Haley filed a second amended petition ("Petition") against Bennett and Smoot, among others.[3] Once again, Haley alleged that Bennett's and Smoot's negligence and their lack of adequate supervision of players at the Camp led to Haley's injury. The Petition alleged that Bennett and Smoot were employed as head football coaches for area high schools at the time of the incident and that the Camp was "a multi-school football scrimmage." The Petition stated that "Bennett was supervising the football team comprised of Centralia participants" and that "Smoot was supervising the football team comprised of Clinton participants." The Petition no longer alleged that Bennett and Smoot were acting within the scope of their employment.

---

[2]Haley has also sued Steve Cook individually and doing business as Pizza Hut Hut Hut Team Camp. The claims asserted against Cook are not at issue in this appeal.
[3]*See* footnote number 2.

4

Bennett and Smoot filed separate motions for summary judgment, arguing (among other things) that Haley's claims against them were barred by the doctrine of official immunity given their status as public school teachers and coaches. The trial court entered a judgment granting Smoot's motion on March 27, 2015, and a separate judgment granting Bennett's motion on April 3, 2015. The trial court's judgments did not specify the basis on which the motions for summary judgment were granted. The trial court found that each judgment should be designated as final for purposes of appeal pursuant to Rule 74.01(b) because there was no just reason for delay.

Haley separately, and timely, appealed both judgments.[4] We consolidated the appeals.

## Standard of Review

The Supreme Court set out the standard of review for the grant of summary judgment in *Goerlitz v. City of Maryville*:

> The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); Rule 74.04. In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. *Id.* Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.* The facts contained in affidavits or otherwise in support of a party's motion are accepted "as true unless contradicted by the non-moving party's response to the summary

---

[4]The judgments resolved all issues as between Haley and Bennett, and Haley and Smoot, respectively, rendering each judgment an appealable judicial unit pursuant to Rule 74.01(b). *Gibson v. Brewer*, 952 S.W.2d 239, 245 (Mo. banc 1997) (finding that where a "trial court resolved all legal issues and left open no remedies" as between the plaintiff and a particular defendant, the trial court had the authority under Rule 74.01(b) to "enter [a] judgment as to fewer than all parties and certify that there is 'no just reason for delay'") (quoting Rule 74.01(b)).

5

judgment motion." *Id.* Only genuine disputes as to material facts preclude summary judgment. *Id.* at 378. A material fact in the context of summary judgment is one from which the right to judgment flows.

> A defending party . . . may establish a right to summary judgment by demonstrating: (1) facts negating any one of the elements of the non-movant's claim; (2) "that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one" of the elements of the non-movant's claim; or (3) "that there is no genuine dispute as to the existence of facts necessary to support movant's properly pleaded affirmative defense." *Id.* at 381.

333 S.W.3d 450, 452-53 (Mo. banc 2011). "The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue of material fact required to support the claimed right to judgment." *Southers v. City of Farmington*, 263 S.W.3d 603, 608 (Mo. banc 2008).

The trial court did not explain its rationale for granting Bennett's and Smoot's motions for summary judgment. "Where a trial court has granted summary judgment without specifying the basis upon which the motion was granted, this court will affirm the grant of summary judgment under any appropriate theory." *Central Missouri Elec. Co-Op. v. Balke*, 119 S.W.3d 627, 635 (Mo. App. W.D. 2003) (citation omitted). "[A] trial court[] . . . is presumed to have based its decision on the grounds specified in [the] motion if the trial court's order does not set forth its reasoning." *Id.* (citation omitted).

### Analysis

Haley raises five points on appeal, each claiming error in the grant of summary judgment. The first point alleges that there was a genuine issue of material fact as to whether Bennett and Smoot were acting within the scope of their employment, which

6

prevented the entry of judgment as a matter of law based on either the affirmative defense of official immunity or the affirmative defense of immunity under the Coverdell Act.[5] The second point alleges that the trial court misapplied the law because Bennett and Smoot were not public officials entitled to assert the defense of official immunity or the defense of immunity under the Coverdell Act. The third, fourth, and fifth points respectively allege that the trial court misapplied the law in finding that the earlier dismissal of Haley's first amended petition barred his recovery against Bennett; in requiring a standard of willful and reckless conduct be applied to Bennett's and Smoot's conduct; and in finding that Haley assumed the risk of injury.

We combine our discussion of points one and two as both address whether summary judgment could have been granted based on the affirmative defense of official immunity.[6] Because we conclude that the trial court's entry of summary judgment can be affirmed based on the defense of official immunity, we need not address the defense of immunity under the Coverdell Act or the claims of error raised in points three, four and five.

---

[5]The Coverdell Act, 20 U.S.C. sections 6731-6738 (2006), has the stated purpose "'to provide teachers, principals, and other school professionals the tools they need to undertake reasonable actions to maintain order, discipline, and an appropriate educational environment.'" *Dydell v. Taylor*, 332 S.W.3d 848, 855 (Mo. banc 2011) (quoting 20 U.S.C. section 6732). The Coverdell Act "parallels the purpose of Missouri's common law doctrine of official immunity." *Taylor*, 332 S.W.3d at 855 n.5. However, the essential elements of the two defenses are distinct, and they must be separately pled and proven. *Id.* (noting that Court would not reach issue of official immunity when superintendent only pleaded the defense of immunity under the Coverdell Act); *M.C.-B. ex rel. T.B. v. Hazelwood Sch. Dist.*, 417 S.W.3d 261, 263 (Mo. App. E.D. 2013) (availability of the defense of official immunity and the defense of immunity under the Coverdell Act were separately analyzed in a negligence suit against school officials).

[6]Points one and two are impermissibly multifarious because they claim error in entering summary judgment with respect to distinct affirmative defenses--official immunity and the defense of immunity under the Coverdell Act. "Generally, multifarious points preserve nothing for appellate review and are ordinarily subject to dismissal." *Hopkins v. Hopkins*, 449 S.W.3d 793, 802 (Mo. App. W.D. 2014). We proceed with a review of points one and two, however, because we can affirm the trial court's judgments based on the defense of official immunity with no need to address the defense of immunity under the Coverdell Act.

Haley's first and second points on appeal argue that Bennett and Smoot are not public officials entitled to assert the defense of official immunity, and that even if they are, there is a genuine issue of material fact in dispute as to whether they were acting in the scope of their employment. We disagree.

"Official immunity protects public officials from liability for alleged acts of ordinary negligence committed during the course of their official duties for the performance of discretionary acts." *Woods v. Ware*, 471 S.W.3d 385, 391 (Mo. App. W.D. 2015) (quoting *Davis v. Lambert–St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. banc 2006)). "Official immunity is intended to provide protection for individual government actors who, despite limited resources and imperfect information, must exercise judgment in the performance of their duties." *Ware*, 471 S.W.3d at 391 (quoting *Southers*, 263 S.W.3d at 611). "Its goal is also to permit public employees to make judgments affecting public safety and welfare without concerns about possible personal liability." *Southers*, 263 S.W.3d at 611.

"Missouri courts have routinely extended official immunity to discretionary acts even when the public official's actions were not governmental in nature." *Richardson v. City of St. Louis*, 293 S.W.3d 133, 140 (Mo. App. E.D. 2009). Moreover, the Supreme Court has "thoroughly discussed the scope of official immunity and did not restrict immunity only to those actions which 'go to the essence of governing.'" *Id.* (quoting *Southers*, 263 S.W.3d at 610-11). "This court and this court's Eastern District, relying on the Missouri Supreme Court's clarification of the doctrine of official immunity in *Southers,* both found that teachers are public employees who are protected from liability

8

for negligent acts committed during the course of their official duties for the performance of discretionary acts." *Ware*, 471 S.W.3d at 392 n.4 (citing *Nguyen v. Grain Valley R–5 School Dist.*, 353 S.W.3d 725, 731 (Mo. App. W.D. 2011); *Boever v. Special School Dist. Of St. Louis Cnty.*, 296 S.W.3d 487, 492 (Mo. App. E.D. 2009); *McCoy v. Martinez*, ED 103719, 2016 WL 231487, at *3 (Mo. App. E.D. Jan. 19, 2016); *see also Nine v. Wentzville R–IV School Dist.*, No. 4:11–CV–353 CEJ, 2011 WL 2564767 (E.D. Mo. June 28, 2011) (teachers are public officials entitled to official immunity)). "Thus . . . coach[es] hired by a public school district [are] public employee[s] entitled to official immunity for [their] discretionary acts." *Ware*, 471 S.W.3d at 392.

Haley cites several dated cases[7] to support his argument that public school teachers and coaches are not public officials entitled to official immunity. All of those cases, however, were decided before *Southers*, which held that that "the official immunity doctrine protects all public employees 'from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts.'" *Ware*, 471 S.W.3d at 392 n.4 (quoting *Southers*, 263 S.W.3d at 610). As such, the cases Haley cites are neither persuasive nor controlling.[8] The trial court could properly have concluded, therefore, that Bennett and Smoot are public officials entitled to assert the defense of official immunity, so long as their alleged acts of negligence were

---

[7]These cases include *Jackson v. Roberts*, 774 S.W.2d 860 (Mo. App. E.D. 1989); *Lehmen v. Wansing*, 624 S.W.2d 1 (Mo. banc 1981); *Spearman v. Univ. City Public School Dist.*, 617 S.W.2d 68 (Mo. banc 1981), *Kersey v. Harbin*, 591 S.W.2d 745 (Mo. App. 1979); *Bolon v. Rolla Pub. Sch.*, 917 F. Supp. 1423, 1427 (E.D. Mo. 1996); *S.B.L. By & Through T.B. v. Evans*, 80 F.3d 307, 309 (8th Cir. 1996).

[8]Haley attempts to distinguish *Southers* and *Ware* by discussing the factual differences between those two cases and this one. Those factual differences, however, do not alter the legal principle that public school teachers and coaches are public employees entitled to assert the defense of official immunity.

"'committed during the course of their official duties for the performance of discretionary acts.'" *Id.* (quoting *Southers*, 263 S.W.3d at 610).

Haley concedes that Bennett's and Smoot's alleged negligent acts were discretionary[9] in nature. Haley admits that "the evidence clearly showed that Bennett and Smoot themselves, not their respective school districts, were in control of their services at the Camp." [Appellant's Brief, p. 26]

Haley argues, however, that because Bennett and Smoot "were in control of their services at the Camp," there is a genuine issue of material fact in dispute as to whether Bennett and Smoot were acting "within the course and scope of their employment" at the time of Haley's injury. [Appellant's Brief, p. 18] Specifically, Haley argues that unless the school districts are vicariously liable because they controlled the manner, methods, and means of Bennett's and Smoot's performance at the Camp, there was no employment relationship with the coaches sufficient to support official immunity. [Appellant's Brief pp. 18-20]

Haley's argument relies on *Woods v. Kelley*, 948 S.W.2d 634 (Mo. App. W.D. 1997), a case that addresses whether a governmental entity entitled to *sovereign*

---

[9]"Official immunity is designed to protect individual public employees who must exercise discretion in performance of their duties . . . ." *Ware*, 471 S.W.3d at 392 (citing *Davis*, 193 S.W.3d at 765). "The official immunity doctrine does not provide public employees immunity for torts committed when acting in a ministerial capacity." *Southers*, 263 S.W.3d at 610. "A discretionary act requires the exercise of reason and discretion in determining how an act should be done or what course of action should be pursued." *Ware*, 471 S.W.3d at 392 (internal citation omitted). "A ministerial function is one which is of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id.* (internal quotation omitted). "The determination of whether an act is discretionary or ministerial is made on a case-by-case basis, considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity." *Southers*, 263 S.W.3d at 610.

immunity has waived that immunity pursuant to section 537.600[10] for injuries resulting from a public employee's negligent operation of a motor vehicle. To resolve that question, we looked at whether the governmental entity had the power to direct and control the employee's conduct at the time of the injury under "the traditional common law doctrine of vicarious liability." *Id.* at 637. We concluded that a city alderman who voluntarily provided landscape services to property the city was required to maintain was acting as a volunteer, and not as a public employee, when her negligent operation of a vehicle caused injuries to another. *Id*. 635-38. We tailored the statutory waiver of sovereign immunity for a governmental entity in this manner because waivers of sovereign immunity are required to be narrowly construed. *Id*. at 637.

Haley cites no authority for the proposition that the vicarious liability doctrine, relied on to narrowly tailor a waiver of *sovereign* immunity, applies equally to narrowly tailor when a public official is entitled to *official* immunity. *Thummel v. King*, 570 S.W.2d 679, 687 (Mo. banc 1978) (holding that an appellant has an obligation to cite appropriate precedent to support an argument). In the absence of authority, we would be within our discretion to consider Haley's argument abandoned. *Steltenpohl v. Steltenpohl*, 256 S.W.3d 597, 599-600 (Mo. App. W.D. 2008). Instead, we find the argument to be plainly without merit. To hold as Haley suggests would be to disregard the very essence of the defense of official immunity which applies only to ***discretionary*** acts. "'A discretionary act requires the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done or course

---

[10]All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

11

pursued.'" *Nguyen*, 353 S.W.3d at 730 (quoting *Southers*, 263 S.W.3d at 610).  A discretionary act is the antithesis of restrictive employer control over the details of the manner, methods, and means of how work is performed.

Simply stated, Haley's proposition disregards the fact that "sovereign immunity and official immunity are distinct legal concepts." *Davis*, 193 S.W.3d at 765.  Waivers of a governmental entity's sovereign immunity are to be narrowly construed.  *Woods*, 948 S.W.2d at 637.  At the same time, "[t]he aim of official immunity is to allow officials to 'make judgments affecting the public safety and welfare' without being burdened by '[t]he fear of personal liability.'"  *Davis*, 193 S.W.3d at 765 (quoting *Green v. Denison*, 738 S.W.2d 861, 865 (Mo. banc 1987)).  This purpose would not be served by restraining official immunity to the performance of duties under circumstances that would subject an employer to vicarious liability.  Though "[a] governmental employer may still be liable for the actions of its employee even if the employee is entitled to official immunity," *Davis*, 193 S.W.3d at 766, it does not follow that an employee is only entitled to official immunity if the employee's conduct will subject the governmental employer to vicarious liability.

Instead, as directed by *Southers*, the standard for determining whether a public official has official immunity is whether the public official negligently performed discretionary acts "'during the course of their official duties.'"  *Ware*, 471 S.W.3d at 392 n.4 (quoting *Southers*, 263 S.W.3d at 610).  This is a broader standard than whether a

12

public official has acted strictly within the scope of employment because the manner, methods, and means of performance were subject to the employer's control.[11]

The uncontroverted facts establish that Bennett and Smoot were performing discretionary acts during the course of their official duties at the time Haley was injured. Haley admits that Bennett and Smoot were employed as teachers and football coaches by their respective school districts during the Camp and that the Camp was a "multi-school football scrimmage." Haley admits that Bennett's and Smoot's "roles at the [C]amp were as football coaches." Haley admits that he was injured while participating in the football scrimmage while under Bennett's and Smoot's supervision.

It is uncontroverted that Bennett was employed by Centralia as the head football coach at the time of the incident; that he was acting as a public school employee and head football coach at the time of the incident; that he received compensation for all football related activities from the school district; that he received permission from his school's athletic director to attend the Camp; that he received permission to use school district transportation, equipment, and uniforms at the Camp; that he decided which players would attend the Camp; that he decided how long the Centralia High School football team would attend the Camp; that he decided how many games the team would play at the Camp; and that he would stop play at the Camp if he observed rule infractions or dangerous play.

---

[11]Haley has not asserted a claim that any governmental entity is vicariously liable for Bennett or Smoot's actions or inactions, so our discussion should not be construed to address vicarious liability. Instead, we simply hold that vicarious liability principles are not relevant in deciding whether Bennett and Smoot are entitled to official immunity.

It is uncontroverted that Smoot was employed by Clinton as the head football coach during the incident; that he took the Clinton High School football team to the Camp to prepare for the upcoming season; that he received a stipend to compensate him for all football related activities; that his football activities extended through the summer; that his school's athletic director approved of his decision to attend the Camp; that he received permission to use school district transportation, equipment, and uniforms at the Camp; that he decided who his team would play against at the Camp; that he decided which players would play on any given play; that he determined whether his players were practicing in a safe manner at the Camp, and that he would stop play at the Camp if he observed rule infractions or dangerous play.

These uncontroverted facts establish that Bennett and Smoot's "'alleged acts of negligence [were] committed during the course of their official duties.'" *Ware*, 471 S.W.3d at 392 n.4 (quoting *Southers*, 263 S.W.3d at 610). The trial court did not err in concluding that Bennett and Smoot are entitled to official immunity.

Points one and two insofar as they address official immunity are denied. Because we can affirm the trial court's grant of summary judgment to Bennett and Smoot on the basis of the defense of official immunity, we need not address the defense of immunity under the Coverdell Act or the claims of error in granting summary judgment raised by Haley's third, fourth, and fifth issues on appeal.

14

## Conclusion

The trial court's judgments granting Bennett's and Smoot's motions for summary judgment are affirmed.

_____
Cynthia L. Martin, Judge

All concur.