# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-2502

_____

L.B., by and through next friend, Michael Buschman

*Plaintiff - Appellant*

v.

Jefferson City School District, properly named Jefferson City Public Schools, formerly known as Jefferson City Public School District; Robert James

*Defendants - Appellees*

John Doe

*Defendant*

_____

Appeal from United States District Court
for the Western District of Missouri – Jefferson City

_____

Submitted: September 22, 2020
Filed: January 11, 2021
[Unpublished]

_____

Before KELLY, WOLLMAN, and STRAS, Circuit Judges.

_____

PER CURIAM.

L.B. sued her school district and high-school principal after she was sexually abused by an older family member. The question is whether releasing her early from school without authorization makes either liable for the abuse. On these facts, we agree with the district court[1] that it does not.

I.

Under Jefferson City School District policy, school principals are responsible for creating procedures to ensure that students are dismissed early "only for proper reasons" and "to authorized persons." For L.B., this authority rested with Principal Robert James.

When requests for early dismissal came in over the telephone, school employees were supposed to ask for verifying information—such as the caller's name, home address, and phone number—to ensure that a "parent or guardian" was the one making the request. Doubts about a caller's identity could be resolved through follow-up questions.

The problem was that school officials did not always follow these procedures. When L.B.'s 31-year-old cousin called, for example, no one verified his identity. On each of those four occasions, the school district excused L.B., only to have her cousin sexually abuse her at his home.

As relevant here, L.B.'s father sued Principal James for negligence, and the school district, the unidentified school employee who answered the calls, and James for a violation of the Missouri Human Rights Act. The defendants removed the case to federal district court, which dismissed it on summary judgment.

---

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

II.

We review the decision to grant summary judgment de novo. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "Summary judgment is appropriate [if] the evidence, viewed in a light most favorable to the nonmoving party, shows no genuine issue of material fact exists and the moving part[ies are] entitled to judgment as a matter of law." *Phillips v. Mathews*, 547 F.3d 905, 909 (8th Cir. 2008) (quotation marks omitted).

A.

L.B.'s first claim is against Principal James for ordinary negligence. *See Johnson v. Auto Handling Corp.*, 523 S.W.3d 452, 460 (Mo. banc 2017), *as modified* (Aug. 22, 2017) (laying out the elements of a negligence claim). The district court concluded that Principal James was entitled to official immunity, which "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008).

Like the district court, we conclude that Principal James had to use discretion in creating and administering the school's early-dismissal policy. After all, the school district left it to "building principal[s to] establish procedures to validate requests for early dismissal," and noted that the "procedures may vary depending on the age of the student." This type of language, including the use of the word "may," connotes classic discretion, because it requires an official to exercise "reason and judgment." *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. banc 2006) (quotation marks omitted); *see United States v. Rodgers*, 461 U.S. 677, 706 (1983) ("The word 'may[]' . . . usually implies some degree of discretion."). As the Missouri Supreme Court has explained, official immunity is not lost simply because an act is mandatory if there is still "authority to decide when and how [it] is to be done." *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 193 (Mo. banc 2019); *see also Woods v. Ware*, 471 S.W.3d 385, 395 (Mo. Ct. App. 2015) (holding that

policies giving school officials the flexibility "to recognize the difference[s] among students and seek to meet their individual needs" are discretionary).

## B.

There is a procedural problem with L.B.'s second claim. Before bringing a claim in court for a deprivation of her "full and equal use and enjoyment of the public school and its services," *Doe ex rel. Subia v. Kansas City, Mo. Sch. Dist.*, 372 S.W.3d 43, 51 (Mo. Ct. App. 2012), she had to file a "complaint in writing[] within one hundred eighty days of the alleged act of discrimination" with the Missouri Commission on Human Rights. Mo. Rev. Stat. § 213.075.1. Here, however, she missed the deadline by filing it on the *181st* day after the last allegedly discriminatory act, which means that she failed to exhaust her administrative remedies. *See Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir. 1994).

It makes no difference, at least following a 2017 legislative amendment, that the Commission later sent her a right-to-sue letter. The statute is clear that, "regardless of" that fact, "[t]he failure to timely file a complaint . . . may be raised as a complete defense . . . at any time . . . in subsequent litigation." Mo. Rev. Stat. § 213.075.1; *see also Jones v. Kansas City*, 569 S.W.3d 42, 52 n.8 (Mo. Ct. App. 2019) (noting that recent statutory amendments make a timely filed complaint a prerequisite to bringing a civil action), *overruled on other grounds by Wilson v. Kansas City*, 598 S.W.3d 888 (Mo. banc 2020). The defendants have raised lack of administrative exhaustion as a defense, so we agree with the district court that L.B.'s Missouri Human Rights Act claim cannot get past summary judgment.[2] *See Hamner*

---

[2]Even if we were to reach the merits, we would affirm. *See J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 255 (Mo. banc 2009) (explaining that "[w]hen a [Missouri] statute speaks in jurisdictional terms or can be read in such terms, it is proper to read it as merely setting statutory limits on remedies or elements of claims for relief that courts may grant"). To succeed, L.B. had to prove, among other things, that the school district "knew or should have known of the [abuse] and failed to take prompt and effective remedial action." *Subia*, 372 S.W.3d at 54. There was no evidence here that school officials knew about the abuse, much less that they knew

*v. Burls*, 937 F.3d 1171, 1176 (8th Cir. 2019) (noting that we may affirm on any ground supported by the record).

III.

We accordingly affirm the judgment of the district court and clarify that the dismissal of the Missouri Human Rights Act claim is without prejudice.

_____

---

about it and failed to take action. Nor was there any reason they should have known. The abuse did not occur on school property, L.B. did not tell anyone in a position of authority about her cousin, and he never even stepped foot on campus.